HitcncocK, J.
This case is presented to the court in somewhat of a singular aspect. A mandamus was issued on the relation of Philip Owens and others, claiming to be the members of the Roman Catholic Society of Delhi township, to which a return was regularly made by the defendants. The statute regulating proceedings in cases of this description, requires “ that whenever a return shall be made to any such writ, the person prosecuting such writ may demur, or plead, to all or any of the material facts contained in the said return ; to which the person making such return shall reply, take issue, or demur; and the like proceedings shall be had therein, for the determination thereof, as might have been had if the person prosecuting such writ had brought his action on the case for a false return.” In the case before us, this provision of the statute has been entirely disregarded, and there is neither an issue in fact, nor in law, joined. It would be right to send the case back to the county, with directions to have an issue made up. But as testimony has been taken and the case argued, although we do not intend to sanction the course of practice pursued, we shall not decline to go into its consideration. The counsel *for the respective parties seem to have treated the case as if the return had *23 been traversed; and they also raise some questions of law, as to the effect of the return, provided the court shall consider it as having been proven to be true.
Before referring to the testimony in the case, it is proper to settle the principles of law by which it must be governed.
In the sale of land by the United States to the Ohio Company, and to John O. Symmes, secion 16 in oach'township was reserved for the use of schools, and section 29 for the use of religion in the township. In other sales of public lands by the United States, section 16 has been in like manner reserved, but not section 29. These sections thus reserved for religious purposes have usually, in common parlance, and sometimes in legislative enactments, been denominated ministerial sections.
In section 26, of article 8, of the constitution of the state, it is provided that “laws shall be passed by the legislature which shall secure to each and every denomination of religious societies in each surveyed township, which now is, or may be hereafter formed in the state, an equal participation, according to their number of adherents, of the profits arising from the land granted by Congress for the support of religion, agreeable to the ordinance or act of Congress making the appropriation.”
In accordance with this injunction of the constitution, the general assembly have, from time to time, as seemed necessary, acted upon the subject. The law now in force in relation to it, is found in the act of March 14, 1831, “ to incorporate the original surveyed townships.” In section 13 of this act, it is provided that “ each and every denomination of religious societies, after giving themselves a name, shall appoint an agent who shall produce to the trustees-a certificate containing a list of their names and numbers, specifying that they are citizens of said township; and the agent shall pay over an equal dividend of the rents within three months after they shall have been received, to be appropriated to the support of religion, at the discretion of each society; provided *that all members, above the age of fifteen years, shall be entitled to have their names enrolled by any society.” And in section 15 the trustees of each incorporated township are required to meet on the first Monday in January, annually, and make a dividend of the rents to each religious society; “and in making such dividend, each society shall bo entitled to receive a just proportion of the money received by the treasurer.”
*24 It is clear that this fund is intended for the support of religion in the township in which the section is located, from which it is derived, and can not be appropriated for any other purpose, or for the support of religion in any other place.
It is to be distributed to tho different religious societies in proportion to their numbers ; and in ascertaining numbers, all actually belonging, or adhering, to each society, of the age of-fifteen years, or more, are to be taken into the account, provided “they are citizens of said township.”
Here a question is raised as to the meaning of the word “ citizens,” as used in this connection. That this word does not always mean one and the same thing is clear. Thus, we speak of a person as a citizen, of a particular place, when we mean nothing more by it than that he is a resident of that place. When we speak of a citizen of tho United States, we mean one who was born within the limits of, or who has been naturalized by, the laws of the United States. It can hardly be believed that the legislature, in using the word “ citizen,” in this statute, intended to make a distinction between native or naturalized citizens, and resident aliens. Why should such distinction be made ? Is there not as much need of religious instruction in the one case as the other? To me it seems clear that the word citizen, as here used, should be held to be synonymous with tho word resident. The legislature did intend that, in ascertaining numbers, none but such as were residents of the township should be included. But if there is any doubt upon the subject, that doubt must be removed upon reference to tho constitution. We are bound so to construe every law, if possible, that it shall not conflict with the constitution. *If it can not be so construed, then it must be rejected, for a legislative act which is in violation of the constitution can be of no binding force. The provision of the constitution, as already cited, is, that laws shall be passed, securing to each and every denomination of religious .societies “an equal participation, according to their number of adherents, of the profits arising” from these lands. If a person who is not a citizen can be an adherent of a religious society, this section of the constitution has secured to him a participation in the profits of these lands. It is clear, then, that this law is not such as is required by the constitution, unless we hold the word citizen, as here used, to moan the same as resident.
*25 But before any claim, can be made upon the trustees, the sect claiming must have formed themselves into a society, and must have given themselves a name. It is not enough that there are individuals who are members of Christian churches, residing within the township. A society must be actually formed, and known by name. A religious society is made up of individuals associated together for religious purposes. As to the particular mode or manner of constituting or forming this society, it is immaterial. Each denomination of Christians may form their societies according to the usual practice or custom of their sect. But the society must be formed, and must have a name.
The society thus formed, must appoint an agent. This can not be done by the individual members of the society, by subscribing a paper constituting an individual an agent; but it must be done by vote of the society, as a collective body.
This agent must be furnished with a certified list of the number and names of the members of the society, residing within the township, over the ago of fifteen years.
The society having been thus formed, and having appointed their agent, are entitled to a share of the fund, in proportion to their numbers, upon the production by the agent to the trustees, of the certified list of numbers and names.
Before the trustees can be justified in distributing any portion of this fund to any agent, they must have satisfactory *evidence that a society has been organized, and has a name, and that an agent has been appointed. The proof of the appointment of the agent should be verified by something more than his own statement.
Such we understand to be the law upon this subject, and it remains to apply it to the case before us.
The first reason assigned by the defendants for not obeying the alternative mandamus is, that there is no such religious society in their township as the “Roman Catholic Society of Delhi township,” regularly organized and having that name.
•Much testimony has boon introduced upon this point by both parties. Without recapitulating it, it is sufficient to say that it is altogether vague, and of such a character as to satisfy us that there never has been any organized society of that name in the township. There are many Catholics in the township, and efforts have been made to effect an organization, not for religious wor *26 ship, but for procuring a portion of this fund. But the law has not been complied with. Three persons have been examined to prove an organization. The first of these is Philip Owens, the principal relator. He states, among other things, as follows: “We organized, as well as 1 remember, in the year 1834, a Roman Catholic Society in Delhi township, for the purpose of becoming a body of people, and to receive our proportion of the ministerial fund When inquired of as to the name of the society, ho says it was the “Roman Catholic Society of Delhi township.” James Cahill speaks of a society organized; and when inquired of as to the name, he says it was “ Catholic.” Anthony Hannah, another witness, says that in January, 1839, ho was at the formation of a society of Catholics in Delhi township, and that the name was the “Roman Catholic Society.” Ho afterward says that the society had been previously formed, but that he had never before attended. These are the only persons who know anything about the formation of a society, which is said to consist of about one hundred and fifty members; and it is, at least, a little singular that no two of them agree as to the name. When called upon for their books, or other written evidence of *the formation or existence of a society, none were produced; and when the defendants called at the place where they were informed such documents could be found, they were not there; but it was said they had been carried away to town to be fixed. As yet, however, they have never been exhibited.
This testimony falls far short of satisfying our minds of the existence of such a society as is claimed; and might be well rejected by the trustees, as not furnishing such proof.
The second cause alleged why the mandamus was not obeyed is, that the defendants did not refuse to pay over the money to the Roman Catholic Society, but only required proof of the formation of such society, of the appointment of an agent, and of the correctness of the list, and proffered, if such proof was given, to pay over the money; but no such proof was exhibited.
This allegation is sustained by the evidence. The only testimony to contradict is, that throe instruments of writing wore produced to the trustees, all of which art, of similar purport. One of those instruments of writing is as follows, to wit: “We, the undersigned, citizens of the township of Delhi, Hamilton county, Ohio, composing the Society of Roman Catholics of said town *27 ship, claiming to have the benefit of the ministerial appropriation for said township, for the year 1838, do appoint Philip Owens our agent, to receive our proportions of said fund, and receipt for the same accordingly. As witness our hands, this December 23, 1838.” Then follow the names of ninety-seven individuals, after which the following certificate: “Certified by Philip Owens, agent for the society.” The entire document, signatures and all, was proven to be in the handwriting of Philip Owens. And, in addition to this, there was the testimony of one witness, that he had heard that there was a Roman Catholic Society in Delhi.
This evidence was not sufficient to prove the existence of the society, nor the appointment of the agent who made the application, without which proof the trustees could not have been justified in paying over the money. Besides, it was suspicious upon the face of it. And these suspicions were ^increased by the testimony of a witness, who stated that Owens went about among the people, with a paper similar to the foregoing, to get names subscribed to it, and that he procured one person, at least, to subscribe to it, who was not of the Catholic faith, by assuring him that that would make no difference; and, by assuring him further, that the money, when procured, should bo distributed íd equal proportions to those whose names appeared on the paper.
Taking the whole case into consideration, the court are of opinion that the return is sufficient in law, and that the facts therein stated are true. Judgment will therefore be entered for the defendants. Judgment for the defendants.