OSCN Found Document:DUTTON v. CITY OF MIDWEST CITY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DUTTON v. CITY OF MIDWEST CITY
2015 OK 51
Case Number: 113170
Decided: 06/30/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 51, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

RODNEY DUTTON, Petitioner,
v.
THE CITY OF MIDWEST CITY, and THE STATE OF OKLAHOMA, Respondents.

APPLICATION FOR EXTRAORDINARY RELIEF

¶0 Petitioner sought an extraordinary writ in the Oklahoma Supreme Court and challenged his convictions in three criminal proceedings in the municipal court for The City of Midwest City. He also requested an alternative remedy that would compel the District Court to provide him with a new appeal of his convictions in the District Court. We assume original jurisdiction for the sole purpose of determining our jurisdiction to review Petitioner's allegations. We hold that the Court does not possess jurisdiction to either review the merits of Petitioner's cause of action challenging his municipal criminal convictions or compel the District Court to provide him with a new direct appeal of those convictions to the District Court.

ORIGINAL JURISDICTION ASSUMED IN PART AND DENIED IN PART AND ALL 
REQUESTS FOR EXTRAORDINARY RELIEF DENIED WITHOUT PREJUDICE
TO PETITIONER SEEKING RELIEF IN THE APPROPRIATE COURT

Rodney Dutton, Midwest City, Oklahoma, Petitioner Pro se.
David F. Howell and J. Steven Coates, Midwest City, Oklahoma, for Respondent, City of Midwest City.

EDMONDSON, J.

¶1 We assume original jurisdiction on the question whether this Court has original jurisdiction to adjudicate both the merits of the claim or cause of action that the Dutton (or Petitioner) has pled in this Court and the associated remedies he requests. We decline to assume original jurisdiction on either the merits of Dutton's cause of action or his requests for relief as pled by him in this Court.

¶2 Dutton pleads a cause of action challenging the correctness of a judgment and sentence in three municipal criminal matters. He seeks an adjudication on the legal correctness of these judgments and sentences in this proceeding, and in the alternative he requests an extraordinary remedy to compel the District Court to provide him a direct appeal of his municipal criminal convictions in the District Court. We conclude that the pled cause of action and remedy sought by him involve criminal matters that are not within the original jurisdiction of this Court. We conclude that Dutton's action in this Court should be dismissed without prejudice to him seeking appropriate relief in the proper court.

I. Pleadings of Dutton and The City of Midwest City

¶3 Dutton alleges that on April 15, 2013, he was convicted in the municipal court of the City of Midwest City, Oklahoma, of the charges of assault, public intoxication, and domestic assault and battery. He states that he was sentenced to thirty days in jail. He states that he was incarcerated for a felony charge on November 24, 2011, which was ultimately dismissed, and he "was released on his own recognizance on about March 7, 2013," and then transferred to the Midwest City jail for trial on his municipal charges. He alleges that he was released from the Midwest City jail on May 10, 2013. He states that while he was incarcerated on the felony charge he was represented by a "public defender."

¶4 He states that he filed three applications for post-conviction relief in the District Court after his release. He alleges that the District Court dismissed the applications for the reason that they should have been filed with the municipal court in Midwest City. His application for this Court to assume original jurisdiction was filed on August 29, 2014, approximately one year and three months after his release.

¶5 Dutton alleges that he was denied his rights guaranteed by the Sixth Amendment to the U. S. Constitution. He states that he was denied counsel at trial and was not allowed to cross-examine witnesses. He alleges that he was denied his rights guaranteed by the Fourteenth Amendment to the U. S. Constitution. He states that he was denied (1) advance notice of the municipal charges against him, (2) a fair trial due to insufficient evidence, and an opportunity to cross-examine witnesses, (3) counsel for an appeal, (4) a direct appeal, (5) "out-of-time appeal," (6) an adequate post-conviction remedy, and (7) counsel for a post-conviction appeal. In his filing herein entitled "Motion to Provide Relief," he alleges that he was "denied his 6th and 14th Amendments rights to counsel and a fair trial and subsequently denied his right to an appeal of wrongful convictions by the city of Midwest City, Oklahoma."

¶6 Dutton alleges that shortly prior to his trial in municipal court he was provided with a written notice of one of the charges against him. He states that the judge refused his request to have a lawyer appointed for him. He states that after the City's prosecutor failed to appear for his trial, the judge questioned the witnesses and refused Dutton's request to cross-examine the witnesses.

¶7 Dutton alleges that the District Court of Oklahoma County:

. . . has delayed and denied the Petitioner in his pursuit of relief in this matter . . . and while "the Oklahoma Court of Criminal Appeals provide him some relief at first and then declined to hear his appeal when the court reporter or court clerk failed to provide him a stamp-filed certified copy of the District Court's order dismissing two of his three post-conviction applications under the Oklahoma Court of Criminal Appeals own rules.

Application to Assume, Aug. 29, 2014, at pg. 2, material omitted.

Dutton's appendix of exhibits, and his other filings in this Court, fail to contain photocopies of any the orders allegedly issued by the District Court of Oklahoma County about which he complains. He alleges that he sought relief in the District Court by filing applications for post-conviction relief pursuant to Oklahoma's Post-Conviction Procedure Act, 22 O.S. 2011 §§ 1080 - 1089.

¶8 Dutton's Appendix does contain purported uncertified photocopies of orders issued by the Oklahoma Court of Criminal Appeals. Three orders, which show docket designations for post-conviction appeals, state that the Court of Criminal Appeals declines jurisdiction and dismisses the matters because Dutton failed to attach to his petition in error a certified copy of the District Court order being appealed, as required by the rules for the Court of Criminal Appeals.[1]

¶9 Dutton's Appendix also contains a purported photocopy of an order of the Court of Criminal Appeals dismissing his motion for the court to reconsider "declining jurisdiction of his post-conviction appeals from Oklahoma County." The court explains that a petition for rehearing that challenges the court's decision in post-conviction appeal is not allowed.

 

¶10 Midwest City's response states that Dutton's allegations relate to three different factual episodes resulting in a criminal prosecution for assault and battery on his wife, prosecutions for assault on a police officer and public intoxication, and then an arrest for felony possession of incendiary devices. He was released from jail, awaiting trial on the felony charge, and returned to the municipal jail for prosecution of the misdemeanors.

¶11 The response states that Dutton and his wife filed two civil rights actions pursuant to 42 U.S.C. § 1983, and claimed that his constitutional rights were violated by Midwest City and its officials in the context of Dutton's arrests, convictions, and sentence of incarceration. The federal court's order dismissing, in part, Dutton's claims lists the violations of constitutional rights as alleged by Dutton and his wife in the federal proceeding.

Mr. Dutton's claims, construed liberally because of his pro se status, appear to be as follows: 1) a First Amendment violation, based upon an alleged retaliation for the comment he made while leaving the courtroom ["I'll see you in federal court."]; 2) a Fourth Amendment claim, based on his arrest and prosecution without probable cause; 3) denial of due process, in violation of the Fifth and Fourteenth Amendments; 4) denial of assistance of counsel, in violation of the Sixth Amendment; 5) an Eighth Amendment claim, based on failure to protect him from abuse by a fellow inmate; and 6) false imprisonment in violation of the Fourteenth Amendment. Further, both plaintiffs assert First and Fourteenth Amendment claims for loss of consortium and violation of their "right to pursue life and happiness together in their marriage and individually without wrongful interference by officials of [the] government."

Order, Jan. 3, 2014, at p. 3, Rodney Dutton and Shirley Dutton v. City of Midwest City, et al., No. CIV-13-0911-HE, U. S. Dist. Crt., W. D. Okla., (explanation added).

The federal court concluded that the plaintiffs could not bring a 42 U.S.C. § 1983 action based upon allegations of an unconstitutional conviction when state law provided a means for challenging the conviction.[2] Midwest City states that Dutton's appeal to the U. S. Court of Appeals for Tenth Circuit was determined by that court to be premature due to Dutton's claims still pending before the federal District Court. Midwest City states that Dutton's claims against it remain pending in the federal court. Midwest City's appendix filed herein also contains uncertified photocopies of two orders by The District Court of Oklahoma County dismissing, without prejudice, Dutton's applications for post-conviction relief.

¶12 Dutton filed a reply to the city's response. He states his innocence of the crimes for which he was convicted. He argues: (1) his municipal arrest was illegal, (2) the trial in the municipal court was not fair because he was not provided with an attorney, and (3) his municipal convictions are void because no record exists of the evidence used against him at the municipal trial. He also objects to the appearances made in this proceeding by two attorneys who filed a response for Midwest City. He requests that this Court "dismiss" these two attorneys from this proceeding.

¶13 In his reply, Dutton requests this Court adjudicate his convictions to be "invalid, null, and void" and to also grant the relief as set forth in his Application filed with this Court. In his Application to Assume Original Jurisdiction, he requests an order of this Court directing the District Court of Oklahoma County "provide him a direct appeal with appointed counsel from Midwest City Municipal Cases docketed as #2011-4369 - Domestic Violence, #2011-5808 - public intoxication, and #2011-5808 - assault and/or any other relief that is appropriately just."[3] Dutton also states he seeks an order "overturning, vacating, and barring" the municipal convictions, or alternatively the Court provide him with a direct appeal of his convictions in the District Court with appointed counsel.[4]

II. The Court's Original Supervisory Civil Jurisdiction

¶14 This Court issued an order and requested Midwest City brief the issue whether this Court possesses jurisdiction to adjudicate the claims made by Petitioner.[5] The city's response argues that (1) the matter before this Court is criminal in nature, (2) "Petitioner has an adequate remedy available under the Post-Conviction Relief Act" (22 O.S. §§ 1080-1089), (3) the Court of Criminal Appeals has subject matter jurisdiction to review orders issued pursuant to the Post-Conviction Act, and (4) this Court should not exercise jurisdiction over Dutton's claims.

¶15 A court has a duty to inquire into whether it possesses jurisdiction over the subject matter of an action that has been brought before the court.[6] This Court has stated a similar rule in various contexts.[7] One application of this rule is found in explanations stating a court has an inherent power to adjudicate whether it possesses jurisdiction in the particular matter before that court,[8] and this Court has the constitutional duty to determine whether a matter is within this Court's jurisdiction or within the jurisdiction of the Court of Criminal Appeals.[9]

¶16 Subject matter jurisdiction is the "power to deal with the general subject involved in the action"[10] or the nature of the cause of action and the relief sought.[11] The Court has explained that subject matter jurisdiction of a court is invoked by pleadings filed by a party with a court and which show that the court has power to proceed in a case of the character presented, or power to grant the relief sought.[12] Our inquiry requires us to examine the nature of Dutton's pled cause of action and the remedy he seeks in this Court and determine whether that cause of action and remedies for that action are within the jurisdiction of this Court.

¶17 The Legislature has authorized a municipality to create a municipal court not of record.[13] A municipal court not of record has original jurisdiction to hear and determine prosecutions based upon an alleged violation of a municipal ordinance.[14] The City of Midwest City has a municipal court not of record.

¶18 A final judgment of a municipal court not of record may be appealed by filing a notice of appeal in both the municipal court and in the District Court in the county where the municipal government is located.[15] The notice of appeal is to be filed "within ten (10) days from the date of the final judgment" of the municipal court.[16] The appellate proceeding in the District Court is a trial de novo with a right to a jury trial in certain circumstances.[17] A District Court adjudicates an appeal from a final judgment of the municipal court not of record, and the form of the District Court's adjudication is a "final judgment or order of a District Court," and that final judgment or order of the District Court may be appealed to the Oklahoma Court of Criminal Appeals.[18]

¶19 The Oklahoma Constitution states that the appellate jurisdiction of the Oklahoma Supreme Court "shall be coextensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute...."Okla. Const. Art. 7 § 4 (emphasis added). We have explained that the Oklahoma Supreme Court lost its jurisdiction to provide appellate review of a judgment on a criminal cause of action upon creation of the Criminal Court of Appeals,[19] and we have recognized the exclusive jurisdiction of the Court of Criminal Appeals in criminal matters.[20] The statutes relating to municipal courts not of record and appeals to both a District Court and the Court of Criminal Appeals contain no provision for the Supreme Court to exercise appellate jurisdiction in these matters. Additionally, the Legislature has provided that "The Court of Criminal Appeals shall have exclusive appellate jurisdiction, coextensive with the limits of the state, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law."[21] In City of Elk City v. Taylor, the Court of Criminal Appeals explained that a prosecution of a cause of action in a municipal court imposing criminal penalties of incarceration, fines, or both, is considered as a criminal cause of action.[22]

¶20 Dutton's pleadings fail to distinguish this Court's jurisdiction in civil matters from the jurisdiction of the Court of Criminal appeals when it adjudicates a criminal cause of action, e.g., personal criminal liability, defenses thereto, and the imposition and execution of a criminal sentence. Secondly, his pleadings do not distinguish claims within the civil jurisdiction of this Court when they are based upon institutional deficiencies apart from a judicial adjudication of a criminal judgment and sentence in a particular case. Thirdly, Dutton does not distinguish our exercise of jurisdiction when the Court of Criminal Appeals has acted in excess of its authority. Fourthly, he does not show how his request is encompassed within other various circumstances where civil jurisdiction exists in this Court, although its exercise may involve a criminal proceeding in a different court.

 

¶21 The first distinction involves the issue defining civil and criminal matters for the purpose of defining a civil matter within this Court's supervisory civil jurisdiction and a criminal matter which is not. We have often explained that if a petitioner's claim is of such a nature that it is normally reviewed by the Court of Criminal Appeals in a properly filed proceeding in that Court such as a direct appeal or post-conviction appeal, then the Oklahoma Supreme Court will not assume jurisdiction on that claim.[23] The scope of claims that are criminal-jurisdiction in nature includes those previously brought by a criminal defendant when using the form of a common-law writ to challenge his or her criminal judgment and sentence.[24] This is so because the Legislature created a post-conviction remedy that supplanted the common-law writs and redefined what post-conviction claims may be made.[25] Under the Constitution and statutes of Oklahoma, the Supreme Court, Court of Criminal Appeals, all other appellate courts and the District Courts have concurrent original jurisdiction to hear and determine a petition for a writ of habeas corpus "by or on behalf of any person held in actual custody."[26] But "the traditional right to writs of habeas corpus in criminal cases has been incorporated into and amplified by Oklahoma's Post-Conviction Relief Act . . . and is therefore considered to be a criminal action" when used to challenge a criminal judgment and sentence.[27] Dutton's pleadings may not be construed as properly seeking declaratory relief against a criminal judgment.[28] In summary, when a petitioner files an application in this Court seeking a common-law extraordinary writ, that request does not transform a criminal matter into a civil matter, and we must examine the substantive nature of the petitioner's claims to determine whether the matter is criminal or civil.

¶22 Dutton claims that he was imprisoned without benefit of counsel, and that Midwest City failed to follow the U. S. Supreme Court opinion in Argersinger v. Hamlin, which guarantees counsel for indigent defendants imprisoned by municipal court process.[29] The Response by Midwest City states that Argersinger "appears to apply to municipal courts." Although we do not decide this issue, we must note: (1) The authority before us provided by both Dutton and the city indicates that a municipality's power to imprison an indigent person must be exercised in the context of providing that person counsel for the process which results in his or her imprisonment;[30] and (2) Our Court of Criminal Appeals has applied Argersinger v. Hamlin, supra, for more than thirty years in criminal proceedings involving Oklahoma municipalities.[31] Dutton's action in this Court is a challenge to criminal convictions based upon his personal constitutional rights.[32] Challenges to a criminal judgment and sentence based upon personal constitutional rights possessed by a defendant in a criminal proceeding are claims that the Court of Criminal Appeals addresses every day, including a claim based upon the absence of a required attorney for the criminal defendant.[33] This Court does not assume original supervisory jurisdiction on this type of claim.

¶23 The second distinction is when an alleged institutional deficiency is raised and the proper functioning of a governmental entity is to be adjudicated. These adjudications do not include an adjudication of the elements of a defendant's criminal offense, defenses, and personal rights a defendant possesses in his or her criminal proceeding as they relate to the criminal cause of action, judgment, or sentence. For example, in State v. Lynch, this Court properly assumed original jurisdiction to adjudicate the institutional and constitutional deficiency arising when attorneys who represented criminal defendants were unconstitutionally compensated.[34] Similarly, in Sanders v. Followell, the Court properly assumed original jurisdiction when a trial judge incorrectly applied a statute setting a lawyer's fee for representing a criminal defendant. The controversy adjudicated by this Court did not involve a part of the criminal cause of action, defenses thereto, or issues relating to the propriety or enforcement of a sentence upon a criminal judgment.[35]

¶24 An additional example of this distinction is found in Walters v. Ethics Commission.[36] The litigation before this Court in Walters included both a supervisory writ proceeding and an appeal from the District Court.[37] In the supervisory writ proceeding, we issued a writ to prevent the District Court from reviewing any action of the Ethics Commission in making a referral of a matter under its investigatory power to a District Attorney.[38] A referral by the Commission was for the purpose of a prosecutor exercising discretion involving the institution of a criminal cause of action in the District Court. In the appeal, we explained the requirements for the proper functioning of the Ethics Commission and we addressed a party's specific claim that statutes were facially unconstitutional.[39] This party also brought a specific allegation concerning the Commission's application of statutes as to him, and we also addressed that claim in the context of Ethics Commission proceedings that occur prior to institution of a criminal proceeding.[40] On the issue whether the party's conduct at issue had been a criminal act, we declined to adjudicate that issue. We observed that the Commission's actions were preparatory to a criminal action being filed in a separate proceeding, and were not proper for adjudication at that time in either the District Court or this Court.[41] Justice Opala's concurring opinion, joined by Simms, J., explained that the Court appropriately reversed the District Court's order while addressing the issues concerning the proper procedure to be used by the Ethics Commission, and had also wisely abstained from addressing whether the party's conduct was a violation of a statute: "Because violators of the Act's pertinent provisions are liable to criminal penalties, . . . [and] the decision regarding criminal liability for one's conduct must always be left to the court with cognizance over the offense charged."[42] In summary, in Walters the Court distinguished between (1) a claim to adjudicate that a government entity was not functioning according to law and (2) a claim to adjudicate whether one or more elements to a criminal cause of action had been committed by a party to the proceeding. The present action requires the Court to determine if Dutton brought any type of proceeding other than a challenge to a criminal conviction, and we conclude that no request within our supervisory or superintending jurisdiction is made by him.

 

¶25 The third distinction involves our exercise of jurisdiction when the Court of Criminal Appeals has acted in excess of its authority in a particular case. For example, when the Court of Criminal Appeals acts in a controversy where no appellate jurisdiction is vested in that Court, then this Court may assume jurisdiction and delineate that Court's jurisdiction.[43] Dutton's purported photocopy of the order by the Court of Criminal Appeals states that the court declines jurisdiction and dismisses his case because: "Petitioner failed to attach to the Petition in Error a certified copy of the District Court Order being appealed as required by . . . [the rules of the court]. As Petitioner has provided an insufficient record for review, this Court declines jurisdiction and dismisses the matter." Similarly, this Court has stated that filing the judgment appealed in this Court is a necessary predicate for appellate review, and its absence may result in a dismissal.[44] This Court has similarly dismissed a proceeding due to a party's failure to follow the rules of this Court.[45] No excess of jurisdiction appears on either the face of the order of the Court of Criminal Appeals or the record submitted by Dutton herein.

¶26 Fourthly, the Legislature has created civil claims as well as Supreme Court jurisdiction in certain matters although our exercise of jurisdiction may have an impact on a criminal proceeding,[46] and there are a few proceedings involving our appellate jurisdiction in matters which are related to a lower court criminal proceeding.[47] If the Legislature has properly created a legal cause of action as a civil jurisdiction matter then this Court has the constitutional and legislatively-mandated responsibility to recognize it as within the jurisdiction of this Court.[48] Dutton does not show how his request is encompassed within other various specific circumstances where civil original jurisdiction is exercised by this Court, although our exercise may involve or affect a lower court criminal proceeding.

III. Original Superintending Jurisdiction

¶27 Dutton filed pleadings in this Court invoking this Court's original jurisdiction. The Oklahoma Constitution vests this Court with original jurisdiction to issue extraordinary writs and a general superintending control over all inferior courts, agencies, commissions, and boards created by law.[49] The Court's supervisory writ jurisdiction over lower courts is not identical to this Court's superintending-control jurisdiction over all courts, agencies, commissions, and boards.[50] We have explained that "It is not always easy or necessary to note the line of demarcation between the two."[51] Confusion between the two types of jurisdiction may arise because superintending-control jurisdiction is usually exercised by the use of writs of prohibition, mandamus and certiorari.[52] However, the form of our superintending-control remedial order is not limited to the specified constitutional writs.[53] The Court has used its superintending control when fulfilling its constitutional responsibilities in various contexts, such as supervising the practice of law pursuant to the Court's Art. 7 § 1 power,[54] enforcing rules of procedure for courts,[55] and deciding publici juris issues involving a serious conflict between different governmental agencies or branches of government.[56] There is no clear legal right to a writ of superintending control and the issuance of such a writ is in the discretion of the Court.[57]

¶28 The Oklahoma Supreme Court has been granted statutory authority by the Legislature to issue orders of statewide application relative to procedures in and practices before the municipal courts and appeals therefrom, subject to the provisions of article 27 of the Municipal Code; and under its general superintending control of all inferior courts, it has the power and authority by and through the Chief Justice of the Supreme Court to call annual conferences of the judges of the municipal courts.[58] This statute is consistent with the Supreme Court's civil jurisdiction because it authorizes the Court to create procedures and practices of statewide application.

 

¶29 The type of corrective relief within the jurisdiction conferred by this statute is one to correct institutional deficiencies and not one to adjudicate individual proceedings determining criminal liability. Nowhere in the statute is this Court given the power to issue writs of either supervisory or superintending control to review an individual criminal proceeding in a municipal court. One reason for this is that the authority to issue writs to a municipal court not of record lies in the District Court, which court also has the statutory appellate criminal jurisdiction over the municipal court criminal case.[59] Appeals from criminal convictions in municipal courts of record are filed with the Court of Criminal Appeals using the procedures authorized for appeals from district courts.[60] Although the Court of Criminal Appeals has no general superintending power over the lower courts, the writs it issues are in aid of its appellate jurisdiction,[61] and the scope of the relief afforded by those writs involves criminal matters. Because the Court of Criminal Appeals has exclusive appellate jurisdiction in criminal matters and jurisdiction to issue supervisory writs in aid of its appellate jurisdiction, that Court is the court which uses a writ power to supervise a criminal matter in a criminal controversy or action that is proceeding in the District Court.

¶30 Relief from a criminal judgment and sentence in a municipal court not of record lies in the municipal court, District Court, and Court of Criminal Appeals.[62] Dutton's pleadings do not seek relief against an institution and the imposition of state-wide rules.[63] He seeks relief in the form of an order vacating his convictions or an order directing the District Court to provide him with a direct appeal of his municipal criminal convictions.

¶31 We have also used "superintending control" in the context of (1) issuing prohibition to prevent a trial court from denying a person's fundamental right of notice and an opportunity to be heard in a judicial proceeding,[64] and (2) noting the publici juris issue presented by a state-wide procedure for collecting jury fees as implemented by a particular District Court Clerk.[65] We have also assumed original jurisdiction to adjudicate "an arguable claim" that a violation of a federal constitutional right had occurred by application of specific state statutes.[66]

¶32 Dutton's claim is that he was imprisoned without the benefit of counsel appointed to represent him, and that he was denied a federal constitutional right. The constitutional grant of superintending control in this Court is not an unlimited power, but a power that is exercised within the definition of "judicial power" as vested in this Court by Article 7 of the Oklahoma Constitution. If a party files a pleading in this Court and requests a determination of his or her legal rights, then a particular type of Article 7 judicial power is invoked in a particular context and the Court acting on that pleading is functioning in the role of an "adjudicator" and not, for example, legislatively or administratively.[67] In summary, Dutton is asking the Court to adjudicate a case. In the exercise of our original supervisory or superintending jurisdiction, when we "adjudicate a case" we must possess both subject matter jurisdiction[68] and a justiciable controversy[69] as shown by the parties' pleadings; and our adjudication is limited by the parties pleadings[70] unless the scope of the adjudication is expanded by one of the few well-known exceptions. Additionally, this expanded adjudication in the context of an exercise of superintending control jurisdiction is itself circumscribed by the usual principles of law applicable to remedies, such as an alternate exclusive remedy defeating the exercise of such jurisdiction.[71] Examples of adjudicatory superintending control jurisdiction being dependent upon application of subject-matter and justiciability principles are found in opinions such as Council on Judicial Complaints v. Maley,[72] Democratic Party v. Estep,[73] and Ethics Commission v. Cullison,[74] and more recent opinions such as Coates v. Fallin.[75]

¶33 Our superintending control jurisdiction is created by Article 7 §§ 1 and 4 of the Oklahoma Constitution and that jurisdiction must be construed in harmony with the constitutional exclusive jurisdiction in criminal matters that is vested in the Court of Criminal Appeals via enactments of the Legislature.[76] Dutton is requesting that we adjudicate the legality of his criminal convictions by an exercise of our superintending control in the context of this Court lacking a general constitutional power for appellate review of final judgments and sentences in criminal cases.[77] It is correct that the historic division between civil and criminal appellate-review jurisdiction has not been a rigid line and this Court and the Court of Criminal Appeals have had a shared responsibility in specific circumstances.[78] That shared responsibility has usually occurred because this Court has been required to define a "criminal case" or matter for purpose of appellate review when the court for such review was not expressly stated in the statute,[79] or when a statutory scheme incorporates both criminal and civil matters or power,[80] or when we have explained sui generis proceedings and a shared appellate-review jurisdiction exists.[81] Dutton's controversy is not one within the shared responsibility of this Court and the Court of Criminal Appeals or a controversy where no appeal has been provided by statute.

¶34 The Court of Criminal Appeals is constitutionally vested with "exclusive appellate jurisdiction in criminal cases" as implemented by legislation.[82] The Legislature has provided an appellate procedure for an appeal from a municipal court to the District Court and then an appeal to the Court of Criminal Appeals. There is no appeal or writ of error from the Court of Criminal Appeals to this Court.[83] There is no doubt that this Court may correct a deficient statutory remedy in the context of an adjudication.[84] But adjudicatory jurisdiction of appeals from Dutton's criminal convictions does not lie in this Court. Dutton may not circumvent the statutory appellate procedures by seeking appellate review of his criminal conviction in this Court.[85]

¶35 It is nothing new for this Court to examine the scope and effect of a party's requested relief to determine whether this Court is impermissibly intruding upon the jurisdiction of the Court of Criminal Appeals. For example, in State ex rel. Henry v. Mahler, the Department of Corrections was statutorily required to apply earned credit days towards a prisoner's sentence of incarceration. We explained that the scope of the statute in the controversy applied to alter a criminal judgment and sentence and was a matter within the exclusive jurisdiction of the Court of Criminal Appeals.[86] The issue of attorney representation of an indigent criminal defendant is a criminal matter by its nature, and thus proper for adjudication within a District Court criminal proceeding and appeal to the Court of Criminal Appeals.[87]

¶36 We conclude that Dutton's pleadings attempt to invoke an original supervisory or superintending adjudicatory jurisdiction of this Court for the purpose of providing him with an appellate review of his municipal criminal judgments and sentences, and we decline to assume original jurisdiction on such claims.

 

IV. Alternative Remedies

¶37 Dutton has ten filings in this supervisory proceeding.[88] None of these filings show that he is without remedies in the District Court or subsequent appeal to the Court of Criminal Appeals. More than forty years ago, the Court of Criminal Appeals stated that the Oklahoma Post-Conviction Relief Act (22 O.S. §§ 1080-1089) "contains no requirement that an applicant be in custody, under any form of restraint or supervision, or that the sentence be unsatisfied in any respect."[89] Dutton's release from confinement would appear to present no theoretical bar to seeking post-conviction relief.[90]

¶38 The orders are not before us, but we may take judicial notice of the dockets of District Courts.[91] In the three District Court actions, 2013-1619, 2013-1620, and 2013-1622, the first and last were "Dismissed without prejudice" and in 1620 its current status appears to be "pending." All of his applications for post conviction relief were filed with the docket designation "CV" for "Civil Misc.: OTHER - CIVIL NO DAMAGES 

¶39 The concept of an adequate remedy appears in several areas of the law with slightly different and overlapping meanings. In the context of creating a remedy and providing equitable relief, we have indicated that when a party has an action at law an equitable remedy will not be available.[92] Similarly, equity is not invocable when an adequate statutory remedy exists.[93] In the context of challenging a judgment, a statutory remedy will preclude a party from successfully invoking equity.[94] Of course, in these contexts the available remedies must be adequate, but adequacy is not measured by whether Dutton obtains the exact relief he desires, i.e., his convictions are voided or he gets a new appeal in this proceeding. Adequacy of a remedy in this context is determined by whether the law provides a means for complete relief for a person with the type of claims Dutton is raising, i.e., a reasonable opportunity to obtain the relief he seeks.

¶40 Generally, in the context of a civil proceeding when the federal constitution requires this State to provide an adequate remedy for a person claiming the denial of a federal constitutional right by the State, the adequacy of an available remedy at law is not measured by that particular party's eventual success on the merits of his or her litigation, but whether a person in that party's circumstances is provided with a clear and certain opportunity for obtaining complete relief at law.[95] For example, if a state exacts a tax in violation of the federal constitution, then it must provide an opportunity to recover those taxes because "a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment."[96] But even in the context of a deprived federal constitutional right, a State may require a person to comply with a clear and certain state procedure when seeking a legal remedy for that deprived federal right.[97] Dutton's action raising federal constitutional claims does not exempt him from using available statutory or common-law proceedings to vindicate his claims. The District Court has stated that his applications for post-conviction relief were denied without prejudice to him seeking relief in the municipal court. Dutton has failed to show why he should not be required to pursue relief in accordance with state statutes and the orders of the District Court.

V. Motion for Counsel, Oral Argument and an Evidentiary Hearing

¶41 Dutton filed a motion requesting the Court appoint counsel to represent him in this proceeding. This Court has noted a right to counsel possessed by a defendant in a criminal prosecution, and that the right is expressly conferred by Art. 2 § 20 of the Oklahoma Constitution.[98] Dutton's proceeding in this Court does not subject him to either criminal fine or punishment, and it is not a criminal prosecution or a statutorily authorized direct appeal from his criminal judgments and sentences. His proceeding in this Court is not a statutorily authorized direct attack on his convictions, but a collateral attack [99] in a civil proceeding seeking an extraordinary superintending writ to review judgments based upon criminal causes of action that were rendered in criminal proceedings.

¶42 There is no doubt that the assistance of a legal practitioner is fundamental to due process "in certain types of civil litigation, aspects of which are analogous to criminal proceedings."[100] We have concluded that legal authority clearly demonstrates that this Court has no authority in this collateral civil proceeding to either void Dutton's convictions or direct the District Court to provide him with an appeal of his criminal convictions. We note the District Court has denied his applications for criminal post-conviction relief without prejudice. We conclude that appointed counsel would not be of assistance in this proceeding and deny Dutton's application for appointed counsel.[101] Because we decline to assume original jurisdiction on the merits of Dutton's claims and because such relief is appropriate in a different court, we deny his motion for an oral argument and an evidentiary hearing.

V. Conclusion

¶43 We assume original jurisdiction solely on the issue of our jurisdiction to hear Dutton's claims. Dutton has failed to show that he lacks adequate remedies in either a municipal court or the District Court. We hold that the Court does not possess jurisdiction to either review the merits of Petitioner's cause of action challenging his municipal criminal convictions or compel the District Court to provide him with a new direct appeal of those convictions to the District Court. We conclude that Dutton's claims are criminal matters and we decline to assume original jurisdiction on his claims or grant him relief on them without prejudice to him presenting them, in the proper court.[102]

¶44 COMBS, V. C. J., WATT, WINCHESTER, EDMONDSON, TAYLOR, and GURICH, JJ, concur.

¶45 REIF, C. J., KAUGER, and COLBERT, JJ., concur in result.

FOOTNOTES

[1] Appendix, Aug. 29, 2014, exhibit 5, page 3, orders of the Court of Criminal Appeals in Dutton v. City of Midwest City, Nos. PC 2014-0632, PC 2014-0633, and PC 2014-0634.

[2] The federal court based its conclusion on Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and Cohen v. Longshore, 621 F.3d 1311 (10th Cir. 2010).

[3] Petitioner's Application to Assume Original Jurisdiction, Okla. Sup. Ct. No. 113,170 (Aug. 29, 2014) pp. 16-17.

[4] Petitioner's Motion to Provide Relief, Okla. Sup. Ct. No. 113,170 (Nov. 14, 2014) pp. 11-12.

[5] Although The City of Midwest City is not a named party in the style of this proceeding as filed by Dutton, The City of Midwest City entered an appearance herein and we requested a response addressing Dutton's allegations. The Court also provided an opportunity for the District Attorney for Oklahoma County to file a response to Dutton's pleadings.

[6] Sanders v. Oklahoma Employment Security Commission, 1948 OK 116, 195 P.2d 272, 274 ("The question of the jurisdiction of the court over the subject matter of an action is properly raised by motion to dismiss for want of jurisdiction; even in the absence of such a motion, it is the bounden duty of the court to inquire into its own jurisdiction.").

[7] See, e.g., Hall v. Geo Group, Inc., 2014 OK 22, ¶ 12, 324 P.3d 399, 404 (rule is stated in the context of appellate jurisdiction, and the opinion cites several of this Court's opinions, including a dissenting opinion by Opala, J., in a controversy where a party invoked statutory original jurisdiction, In Re Oklahoma Boll Weevil Eradication Organization, 1999 OK 1, ¶ 7, n. 22, 976 P.2d 1035, 1040).

[8] See, e.g., Miller v. Fortune Insurance Co., 484 So.2d 1221, 1224 (Fla.1986) quoting 20 Am.Jur.2d Courts § 92 (1965) ("Of course, the trial court has jurisdiction to determine whether it has jurisdiction to grant relief. . . In any case where jurisdiction is a question, the court must have an opportunity to rule on the jurisdictional question, and thus all rules of jurisdiction inherently provide authority for the court to assume jurisdiction for the limited purpose of determining whether a basis exists for the court to proceed further. 'A court has the power and duty [i.e. has jurisdiction] to examine and to determine whether it has jurisdiction of a matter presented to it....'"); Rosado v. Wyman, 397 U.S. 397, 403, n. 3, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (in the context of federal courts, the High Court noted the truism that a court always has jurisdiction to determine its own jurisdiction); Petrella v. Brownback, 697 F.3d 1285, 1292 (10th Cir. 2012) (federal [Article III] courts have inherent jurisdiction to determine their jurisdiction).

[9] The Oklahoma Supreme Court possesses jurisdiction to determine whether it or the Court of Criminal Appeals exercises jurisdiction in a particular controversy. Okla. Const. Art. 7 § 4: ". . . and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final." See, e.g., Smith v. Oklahoma Dept. of Corrections, 2001 OK 95, ¶ 7, 37 P.3d 872, 873 (The Oklahoma Supreme Court [and not the Court of Criminal Appeals] has jurisdiction "to decide jurisdictional conflicts between it and the Court of Criminal Appeals.").

[10] Hobbs v. German-American Doctors, 1904 OK 60, 78 P. 356, 357; Glacken v. Andrew, 1918 OK 20, 169 P. 1096, 1097.

[11] Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870).

[12] State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 47, 264 P.3d 1197, 1215; State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck, 1988 OK 38, 753 P.2d 1356, 1359.

[13] 11 O.S.2011 § 27-101: "A municipality may create a municipal court, as provided in this article, which shall be a court not of record. This court may be created in addition to a municipal criminal court of record. References in Sections 27-101 through 27-131 of this title to the municipal court shall mean the municipal court not of record established under the authority of the provisions of this article."

[14] 11 O.S.2011 § 27-103: "The municipal court shall have original jurisdiction to hear and determine all prosecutions wherein a violation of any ordinance of the municipality where the court is established is charged."

[15] 11 O.S. 2011 § 27-129:

A. An appeal may be taken from a final judgment of the municipal court by the defendant by filing in the district court in the county where the situs of the municipal government is located, within ten (10) days from the date of the final judgment, a notice of appeal and by filing a copy of the notice with the municipal court. In case of an appeal, a trial de novo shall be had, and there shall be a right to a jury trial if the sentence imposed for the offense was a fine of more than Two Hundred Dollars ($200.00) and costs.

B. Upon conviction, at the request of the defendant, or upon notice of appeal being filed, the judge of the municipal court shall enter an order on the docket fixing an amount in which bond may be given by the defendant, in cash or sureties for cash in an amount of not less than One Hundred Dollars ($100.00) nor more than twice the amount of such fine. Bond shall be taken by the clerk of the court wherein judgment was rendered. Any pledge of sureties must be approved by a judge of the court.

C. Upon appeal being filed the judge shall within ten (10) days thereafter certify to the clerk of the appellate court the original papers in the case. If the papers have not been certified to the appellate court, the prosecuting attorney shall take the necessary steps to have the papers certified to the appellate court within twenty (20) days of the filing of the notice of appeal, and failure to do so, except for good cause shown, shall be grounds for dismissal of the charge by the appellate court, the cost to be taxed to the municipality. The certificate shall state whether or not the municipal judge hearing the case was a licensed attorney in Oklahoma.

D. All proceedings necessary to carry the judgment into effect shall be had in the appellate court.

[16] See note 15 supra, at 11 O.S.2011 § 27-129 (A).

[17] See note 15 supra, at 11 O.S.2011 § 27-129 (A). Section 27-129(A) was amended by 2015 Okla. Sess. Laws Ch. 2, § 1 (eff. Nov. 1, 2015), and which states in part that "... there shall be a right to a jury trial if the sentence imposed for the offense was a fine of more than Five Hundred Dollars ($500.00), plus costs, fees, and assessments."

[18] 11 O.S. § 27-132: "An appeal may be taken to the Court of Criminal Appeals from the final judgment or order of a district court in an appeal from a final judgment of a municipal court in the same manner and to the same extent that appeals are taken from a district court to the Court of Criminal Appeals."

[19] In re Opinion of the Judges, 1909 OK 277, 105 P. 325, 326 (Court stated that if it once had any authority to express an opinion on the matter referred to it by the Governor concerning a request for an opinion on a judgment and sentence of death rendered in a District Court, the Supreme Court no longer had such authority because such would be vested in the Court of Criminal Appeals by the creation of that court).

[20] In the Matter of M.B., 2006 OK 63, ¶¶ 8,13, 145 P.3d 1040, 1044, 1047 ("The Court of Criminal Appeals is a court of special and limited jurisdiction, with exclusive appellate jurisdiction only in criminal matters. . . Because the order involved here arose out of a criminal case, and there is a lack of any clear statutory authority providing otherwise, we determine that the Court of Criminal Appeals has jurisdiction over this appeal and transfer the cause."); State ex rel. Henry v. Mahler, 1990 OK 3, 786 P.2d 82, 86 ("Issues concerning the determination of the amount of punishment and questions regarding a prisoner's release from confinement are matters which are, without question, within the Court of Criminal Appeal's exclusive appellate jurisdiction over criminal cases. . . As the Court of Criminal Appeals has repeatedly stated, in a criminal case the 'essential part of the judgment is the punishment and the amount thereof.'") (material omitted).

[21] 20 O.S.2011 § 40: "The Court of Criminal Appeals shall have exclusive appellate jurisdiction, coextensive with the limits of the state, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law."

[22] City of Elk City v. Taylor, 2007 OK CR 15, ¶ 9, 157 P.3d 1152, 1154 (In the context of an appeal from a District Court trial de novo appeal from the judgment rendered in a municipal court not of record, the court stated that "The prosecution in a municipal court for the violation of a city ordinance is a criminal matter as a finding of guilt carries with it criminal penalties, i.e., incarceration or fines or both.").

[23] Carder v. Court of Criminal Appeals, 1978 OK 130, 595 P.2d 416, 420 (Court determined that controversy was within the Supreme Court's appellate jurisdiction because the controversy was not subject to an appeal to the Court of Criminal Appeals from the District Court: "It is clear that this post-dispositional order of dismissal could not have been appealed by either party to the Court of Criminal Appeals."); Jeter v. District Court of Tulsa County, 1922 OK 140, 206 P. 831 (writ of prohibition to prevent trial on ground of double jeopardy denied because Supreme Court did not have jurisdiction to prevent the criminal prosecution); In the Matter of M.B., 2006 OK 63, ¶ 14, 145 P.3d 1040, 1047 ("This case arises out of and relates to a criminal case involving a youthful offender . . . Because this appeal arose out of a criminal case, we determine that the Court of Criminal Appeals has exclusive jurisdiction."); Herndon v. Hammond, 1911 OK 159, 115 P. 775, 776 (the petitioner sought prohibition to restrain further proceedings in the county court on his trial for the offense of unlawfully selling certain intoxicating liquors, and the court denied the writ because of the exclusive appellate jurisdiction of the Court of Criminal Appeals). Accord, State ex rel. Ikard v. Russell, 1912 OK 425, 124 P. 1092, 1093 (Court assumed original jurisdiction, denied the writ, and stated that the proceeding was dismissed without prejudice to the petitioner presenting the issue to the Court of Criminal Appeals).

[24] See State ex rel. Henry v. Mahler, supra, note 20, observing that "As the Court of Criminal Appeals has repeatedly stated, in a criminal case the 'essential part of the judgment is the punishment and the amount thereof.'" Cf. Lockett v. Evans, 2014 OK 34, ¶ 5, 330 P.3d 488, 490 ("As concerns the scope of jurisdiction, neither the district court nor this Court has undertaken a review of the validity or terms of the judgments and sentences in the underlying criminal cases.").

[25] Paxton v. State, 1995 OK CR 46, 903 P.2d 325, 327 ("Prior to the enactment of the Post-Conviction Procedure Act, 22 O.S. §§ 1080-89, in 1970, the writs of habeas corpus and coram nobis were the means available to collaterally attack a conviction."); Campbell v. State, 1972 OK CR 195, 500 P.2d 303 ( " . . . we hold that all such common law writs are no longer available and a statutory remedy [of 22 O.S. §§ 1080-1088] has supplanted them.").

[26] State v. Powell, 2010 OK 40, ¶ 2, 237 P.3d 779, 780; Okla. Const. Art. 7 § 4.

[27] State ex rel. Coats v. Hunter, 1978 OK CR 57, 580 P.2d 158, 159 (referencing the Post-Conviction Relief Act, now codified at 22 O.S.2011 §§ 1080 - 1088). See also Hinkle v. Kenny, 1936 OK 582, 62 P.2d 621 (writ of habeas corpus denied because petitioner had remedy at law in the Criminal Court of Appeals, and the Legislature acting under the authority given by Article 7 had established a Court of Criminal Appeals and gave it exclusive appellate jurisdiction in criminal matters.).

[28] An action for a declaratory judgment will not lie "to launch an impermissible collateral attack upon the judgment and sentence in a criminal case." Oklahoma State Senate ex rel. Roberts v. Hetherington, 1994 OK 16, ¶ 1, 868 P.2d 708, 709.

[29] Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

[30] Argersinger v. Hamlin, supra; Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); Alabama v. Shelton, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002); United States v. Cousins, 455 F.3d 1116, 1126 (10th Cir.2006). See also Scott v. Illinois, 440 U.S. 367, 373-374, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (The Court discussed Argersinger and stated its holding that the Sixth and Fourteenth Amendments to the United States Constitution require that no indigent criminal defendant be sentenced to a term of imprisonment unless he or she been provided with the right to assistance of appointed counsel).

[31] Jackson v. City of Oklahoma City, 1984 OK CR 57, 678 P.2d 725 (Court cited Argersinger when explaining that "appellant was not required to make a 'knowing and intelligent waiver' of counsel since there was no possibility of imprisonment."); Murrah v. Oklahoma City, 1980 OK CR 110, 620 P.2d 1335, 1337 ("In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court recognized that the right to counsel must extend to any trial in which there is to be any imprisonment.").

We also note that two authors have stated that in 1997 the State of New Jersey became the first state to enact legislation requiring every municipal court to have at least one municipal public defender appointed by the governing body of the municipality to represent an indigent defendant accused of an offense, which if convicted, would subject the defendant to imprisonment. Robert J. Martin and Walter Kowalski, "A Matter of Simple Justice": Enactment of New Jersey's Municipal Public Defender Act, 51 Rutgers L.Rev. 637, 676-677, 694 (1999).

[32] See, e.g., Texas v. Cobb, 532 U.S. 162, 171, n. 2, 121 S.Ct. 1335 1921 (2001) ("The Sixth Amendment right to counsel is personal to the defendant and specific to the offense."); Marshall v. Rodgers, ___ U.S. ___, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540 (2013) ("It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process' . . . [and] It is just as well settled, however, that a defendant also has the right to 'proceed without counsel when he voluntarily and intelligently elects to do so'" and the right to counsel is thus a personal right which may be waived for that proceeding.) (citations omitted); Smith v. State, 1971 OK CR 135, 483 P.2d 357, 358-359 ("Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the states by virtue of the Fourteenth Amendment, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one."); Buck v. Dick, 1911 OK 9, 113 P. 920, 921 (party's failure to point out in what manner he had been deprived of any rights guaranteed to him by the Sixth Amendment to the federal Constitution resulted in a waiver of that issue).

[33] See, e.g., Hinsley v. State, 2012 OK CR 11, 280 P.3d 354 (stating that although a defendant may waive his or her right to a jury trial, in this case the defendant's judgments and sentences were reversed on appeal upon the court's conclusion that the record was not sufficient to show a competent, knowing and intelligent waiver of that right); Griffin v. State, 1975 OK CR 173, 540 P.2d 1187 (although judgment and sentence had been satisfied, the application for post-conviction was not moot where petitioner sought to set aside conviction because he had not been advised of his right to counsel and knowingly and intelligently waived such right).

[34] State v. Lynch, 1990 OK 82, 796 P.2d 1150, 1152 ("We find that the present application of the compulsory court appointment system which requires lawyers to represent indigent defendants without a post-appointment hearing, and without providing adequate, speedy, and certain compensation for that representation may violate the Okla. Const. art. 2, § 7 and art. 5, § 51.").

[35] Sanders v. Followell, 1977 OK 143, 567 P.2d 84, 85 ("The determinative issue is whether a total of $2,500 in attorney fees is allowable per styled case, or whether $2,500 is allowable for each defendant represented under 21 O.S.1976 Supp. § 701.14.").

[36] Walters v. Oklahoma Ethics Comm'n, 1987 OK 103, 746 P.2d 172.

[37] Walters, 1987 OK 103, n. 1, 746 P.2d at 174.

[38] Walters, 1987 OK 103, 746 P.2d at 174, 178.

[39] Walters, 1987 OK 103, 746 P.2d at 174-175.

[40] Walters, 1987 OK 103, 746 P.2d at 177 (concluding that Walters was not denied procedural due process by the procedures before the Commission).

[41] Walters, 1987 OK 103, 746 P.2d at 178 (The Commission's determination to refer the matter to the District Attorney was "preparatory to further proceedings" and "when the appropriate authority brings charges against Walters for violations of the Act, the issue of the validity of the loans will come to life.").

[42] Walters, 1987 OK 103, 746 P.2d at 180, Opala, J., concurring, joined by Simms, J.

[43] Carder v. Court of Criminal Appeals, 1978 OK 130, 595 P.2d 416, 420 ("It is clear that this post-dispositional order of dismissal could not have been appealed by either party to the Court of Criminal Appeals. Having no appellate jurisdiction over the juvenile division of the District Court in such matters, the relationship of superior and inferior did not exist between that Court and the District Court in O-77-656 and the Court of Criminal Appeals had no authority to exercise in its issuance of the writ of prohibition.").

[44] Willitt v. ASG Industries, 1978 OK 1, 572 P.2d 1296, 1297; Johnson v. Johnson, 1983 OK 117, 674 P.2d 539, 542.

[45] See, e.g., Rugg v. Layton, 1923 OK 647, 218 P. 660 (in an original proceeding for certiorari the proceeding was dismissed for the petitioner's failure to prepare, serve, and file a brief as required by the rules of the court).

[46] See, e.g., Courtney v. State, 2013 OK 64, ¶¶ 4-6, 307 P.3d 337, 340-341 (Oklahoma Supreme Court has civil appellate jurisdiction of a District Court order adjudicating actual innocence as an ancillary issue determined in a supplemental proceeding when that determination is part of a civil jurisdictional claim and made for the purpose of a party pursuing civil liability for wrongful conviction); Hale v. Board of County Commissioners of Seminole County, 1979 OK 158, 603 P.2d 761, 763 (we explained that although ouster proceedings could be instituted by grand jury accusation, 22 O.S.1971 §1182, by resolution of the board of county commissioners, 22 O.S.1971 § 1194, or by the Attorney General, 51 O.S.1971 § 94; judicial removal proceedings in all District Court proceedings for removal from office, no matter how instituted, the Supreme Court had exclusive jurisdiction on review and in original proceedings for a prerogative writ); 22 O.S. 2011 §§ 350-363 (Supreme Court's oversight and operation of Oklahoma's statutory multi-county grand jury).

[47] An example of a civil proceeding involving a related criminal proceeding is a forfeiture of an appearance bond in a criminal proceeding. Dunn v. State, 1917 OK 269, 166 P. 193 (Appeal from order overruling motion to vacate a judgment of forfeiture upon appearance bond is civil and not criminal case, and lies to Supreme Court.); Hargrove v. State, ex rel. Dennis, 1964 OK CR 105, 396 P.2d 675, 676 (appearance bond forfeiture proceeding is a civil case, not a criminal case). Cf. State v. Torres, 2004 OK 12, 87 P.3d 572 (forfeiture of an appearance bond for a felony defendant appealed to the Supreme Court).

[48] In Oklahoma, a right to appeal from an exercise of judicial discretion in cases of law and equity, excluding criminal matters, is a constitutional right subject to legislative requirements for the manner invoking that appellate jurisdiction. Okla. Const. Art. 7 § 4; Wells v. Shriver, 1921 OK 122, 197 P. 460, 478-479. We need not address those circumstances where either the Legislature has authority to exclude a particular exercise of governmental power from the scope of this Court's reviewing authority or the various constitutional limits on that power of the Legislature.

[49] Okla. Const. Art. 7 § 4, provides in part that: "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law."

[50] Board of Commissioners of Harmon County v. Keen, 1944 OK 243, 153 P.2d 483, 485 ("The jurisdiction to issue the named writs and the jurisdiction to exercise superintending control over inferior courts, while separate and distinct . . .are closely related."). Cf. State ex rel. Freeling v. Kight, 1915 OK 772, 152 P. 362, 364 (superintending control over inferior courts is separate and in addition to the general appellate jurisdiction of the Supreme Court).

[51] Board of Commissioners of Harmon County v. Keen, 1944 OK 243, 153 P.2d at 485.

[52] Ethics Comm'n v. Cullison, 1993 OK, 850 P.2d 1069, 1072; Board of Commissioners of Harmon County v. Keen, 1944 OK 243, 153 P.2d at 485.

[53] Ethics Comm'n v. Cullison, 1993 OK, 850 P.2d 1069, 1073 (". . . we have explained that this court's superintending control is not limited to the constitutionally specified writs of Okla. Const. Art. 7 § 4."); Draper v. State, 1980 OK 117, 621 P.2d 1142, 1147 (When the Attorney General argued that the Court had no superintending control jurisdiction over the act of the Attorney General in issuing an official Attorney General's Opinion, and opposing counsel argued that the issuance of an A. G. opinion was a quasi-judicial function within the Court's power to review, the Court explained that: "Even though the Attorney General may have exercised quasi-judicial powers in the interpretation of the statutes, and it is appropriate to issue a writ of prohibition to control the performance of judicial and quasi-judicial activities, we choose not to issue a writ of prohibition but rather determine the opinions to be invalid and of no effect.").

[54] The Oklahoma Constitution, Art. 7 § 1, vests "judicial power" in the Supreme Court and that vesting "gives it the right to regulate the matter of who shall be admitted to practice law before the Supreme Court and inferior courts, and also gives it the right to regulate and control the practice of law within its jurisdiction." In re Integration of State Bar of Oklahoma, 1939 OK 378, 95 P.2d 113, 114.

The Court's Art. 7 § 4 superintending power over "inferior courts" includes an authority to control and regulate the practice of law. State v. Lynch, 1990 OK 82, 796 P.2d 1150, 1163 (In the context of the Court's superintending power pursuant to Okla. Const. Art. 7 § 4 and its administrative power pursuant to Art. 7 § 6, the Court stated that it "is constitutionally vested with the power to control and regulate the practice of law in this State.").

[55] State ex rel. Freeling v. Kight, 1915 OK 772, 152 P. 362.

[56] Ethics Commission v. Cullison, 1993 OK, 850 P.2d 1069, 1073 ("We have in the past provided a remedy when a branch of state government brings a legal claim alleging that an 'intolerable conflict' exists with a co-ordinate branch of state government amounting to governmental gridlock.").

[57] Butler v. Breckinridge, 1967 OK 177, 442 P.2d 313, 318; Board of Commissioners of Harmon County v. Keen, 1944 OK 243, 153 P.2d 483, 485.

[58] 11 O.S.2011 § 27-131:

"The Supreme Court is authorized to issue orders of statewide application relative to procedures in and practices before the municipal courts and appeals therefrom, subject to the provisions of this article, and under its general superintending control of all inferior courts, shall have the power and authority by and through the Chief Justice of the Supreme Court, to call annual conferences of the judges of the municipal courts of Oklahoma to consider matters calculated to bring about a speedier and more efficient administration of justice."

[59] 11 O.S. 2011 § 27-128:

The district court in each county wherein a municipal court is established shall have the same jurisdiction to issue to the municipal court writs of mandamus, prohibition and certiorari as the Supreme Court now has to issue such writs to courts of record.

[60] 11 O.S.2011 § 28-128:

Appeals may be taken from a judgment or order of a municipal criminal court of record to the Court of Criminal Appeals in the same manner and to the same extent that appeals are now taken from the district courts to the Court of Criminal Appeals in criminal matters, and no appeals other than those herein provided shall be allowed.

[61] Movants to Quash Multicounty Grand Jury Subpoena v. Dixon, 2008 OK 36, ¶ 6, 184 P.3d 546, 548. See State ex rel. Henry v. Mahler, 1990 OK 3, 786 P.2d 82, 85 ("Where the Court of Criminal Appeals has no appellate jurisdiction it has no power to issue writs of prohibition and/or mandamus.").

[62] See, e.g., Houghton v. City of Wewoka, 1988 OK CR 86, 753 P.2d 933 (municipal courts not of record may utilize a process similar to that in the District Courts for curing a procedurally defective appeal), overruled in part, Blades v. State, 2005 OK CR 1, ¶ 5, 107 P.3d 607, 608, where the Court of Criminal Appeals stated that the same rule procedure applied to both the seeking of an out of time appeal from either an original sentencing or a revocation of sentences, and that the District Court serves the function of fact finding only, and the Court of Criminal Appeals would determine whether to grant an appeal out of time.

[63] Because his pleadings do not raise this issue we need not address the type of factual support or record in an original jurisdiction proceeding that is needed for a request that the Court create court rules for state-wide application.

[64] Muggenborg v. Kessler, 1981 OK 66, 630 P.2d 1276, 1279.

[65] Naylor v. Petuskey, 1992 OK 88, 834 P.2d 439, 440 ("The issue in this original proceeding is whether the Court Clerk for the District Court of Oklahoma County, Oklahoma, may charge and collect the jury fee prescribed in 28 O.S.1991, § 152.1 more than one time before a jury trial is had in a pending action ...This novel controversy has statewide implications and accordingly is a matter of publici juris.").

[66] Sharp v. Tulsa County Election Board, 1994 OK 104, ¶ 4, 890 P.2d 836, 839 (In the context of assuming jurisdiction on "an arguable claim" that a violation of a constitutional right had occurred, this Court stated that it "has the authority to issue a writ of mandamus when the questions are publici juris, or when some unusual situation exists so that a refusal to exercise jurisdiction would work a great wrong or a denial of justice.").

[67] Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, 624 P.2d at 1052.

[68] The focus of a subject matter jurisdiction analysis is on the nature of the pled action in relation to the power of a court to adjudicate and grant relief in an action of that nature. The phrase subject matter jurisdiction refers to the power of a court to deal with the general subject involved in the action or the nature of the cause of action, and this jurisdiction is present when a court has power to proceed in a case of the character presented. State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 47, 264 P.3d 1197, 1215 (subject matter jurisdiction is when a court has power to proceed in a case of the character presented, or power to grant the relief sought); Hobbs v. German-American Doctors, 1904 OK 60, 78 P. 356, 357 (jurisdiction of the subject-matter is the power to deal with the general subject involved in the action); Glacken v. Andrew, 1918 OK 20, 169 P. 1096, 1097 (same).

[69] Generally, the focus of a justiciability analysis is on the parties and the nature of their adverse legal interests in the particular pled controversy, and not on the nature of the pled cause of action as it relates to the power of the court to address that type of action. See, e.g., Application of State ex rel. Dept. of Transportation, 1982 OK 36, 646 P.2d 605, 608-609 ("Included within the rubric of 'justiciability' is a controversy which is (a) definite and concrete, (b) concerns legal relations among parties with adverse interests and (c) is real and substantial so as to be capable of a decision granting or denying specific relief.").

This focus on the interests of the parties has been present when we addressed a justiciable controversy in the context of declaratory relief and have said that justiciability is present when there is: (1) a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination. Chrysler Corp. v. Clark, 1987 OK 32, 737 P.2d 109, 110, quoting Gordon v. Followell, 1964 OK 74, 391 P.2d 242, 244.

District Courts possess "unlimited jurisdiction of all justiciable matters, except as otherwise provided in this Article . . . ." Okla. Const. Art. 7 § 7(a). Reeds v. Walker, 2006 OK 43, ¶ 11, 157 P.3d 100, 107. We need not perform a complete analysis of a District Court's unlimited subject matter jurisdiction based upon the concept of justiciability in Okla. Const. Art. 7§ 7, or compare such to the federal limitation of "judicial power" to "cases" and "controversies" by U. S. Const. Art. III; but we do note that (1) our Court has addressed a lack of subject matter jurisdiction as dependent upon an absence of justiciability, and (2) while subject matter jurisdiction and constitutional justiciability are not the same thing, they have a similar concept involving a constitutional power to adjudicate. See, e.g., State ex rel. Southwestern Bel Tel. Co. v. Brown, 1974 OK 19, 519 P.2d 491, 495 (although a District Court possesses subject matter jurisdiction over tort claims, with regard to the plaintiffs' tort action "the question is whether this is a justiciable controversy"); Katherine Mims Crocker, Justifying A Prudential Solution to the Williamson County Ripeness Puzzle, 49 Ga.L. Rev. 163, 201, n. 204 (2014) ( "Under federal law, the concepts of justiciability and subject-matter jurisdiction can be seen as stemming from textually distinct sources, too. Constitutional justiciability doctrines derive from Article III's limitation of '[t]he judicial power' to 'cases' and 'controversies.'").

[70] Generally, the Court's adjudicatory judicial power in an original action is limited to the facts and issues framed by the pleadings and as amended by the partes' briefs in this Court. La Bellman v. Gleason & Sanders, Inc., 1966 OK 183, 418 P.2d 949, 953 ("The jurisdiction of the trial court is limited to the particular subject matter presented by the pleadings, and any judgment which is beyond the issues framed by the pleadings and proof is in excess of the court's jurisdiction and is void."); Oklahoma City v. Robinson, 1937 OK 16, 65 P.2d 531, quoting Gille v. Emmons, 58 Kan 118, 48 P. 569, 570 (1897) in turn quoting Munday v. Vail, 34 N. J. Law 418, 422 (1871) ("A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard.").

[71] For example, one of the well-known exceptions occurs in a public-law controversy where the Court may grant corrective relief upon any applicable legal theory, raised by a party or sua sponte, when that theory is dispositive of the controversy and is supported by the record. Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85, n. 19, 315 P.3d 971, 977. But even when we have assumed jurisdiction "for the primary reason that the questions involved are publici juris" we will not issue a writ when an alternative adequate remedy exists. State ex rel. Crawford v. Corporation Commission, 1938 OK 455, 85 P.2d 288, 289. Cf. Muskogee Fair Haven Manor Phase I, Inc. v. Scott, 1998 OK 26, ¶¶ 1, 13, 957 P.2d 107, 108, 111-112 (Court held that due to adequate and exclusive legislatively prescribed judicial remedies afforded to taxpayers by the Ad Valorem Tax Code the District Court, a court of "unlimited original jurisdiction," "lacked subject matter jurisdiction" to entertain taxpayers' declaratory judgment action.).

[72] In Council on Judicial Complaints v. Maley, 1980 OK 32, 607 P.2d 1180, 1182, the Court explained that "We must first be satisfied that jurisdiction over this proceeding rests with this Court rather than the Court on the Judiciary." The Court concluded that the original action was properly before the Supreme Court instead of the Court on the Judiciary, and then invoked its superintending control as a basis for assuming jurisdiction and granting relief. Id.

[73] Democratic Party of Oklahoma v. Estep, 1981 OK 106, 652 P.2d 271, 272 (original jurisdiction assumed and writ denied due to lack of justiciability).

[74] Ethics Commission v. Cullison, 1993 OK, 850 P.2d 1069, 1073, 1073-1074 (we resolved "inter-governmental legal claims within the discretionary superintending jurisdiction of this Court;" and one issue before us was "the appropriateness of that particular procedure or remedy [declaratory judgment] for the particular justiciable controversy . . . to afford a party a means to vindicate a judicially cognizable interest."), (emphasis and explanatory phrase added).

[75] Coates v. Fallin, 2013 OK 108, 316 P.2d 924 (we noted that until such time as a case or controversy or a justiciable issue is presented to this Court, we were without jurisdiction to rule further with regard to specific legislation).

[76] In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595, 598-599 (provisions of the Constitution relating to the same question should be construed together and harmonized); State ex rel. Blankenship v. Freeman, 1968 OK 54, 440 P.2d 744, 752 (parts of our Constitution adopted by the people at the same time should be construed so as to permit both to stand and give force and effect to each, if they are susceptible of such construction.).

[77] In re Opinion of the Judges, 1909 OK 277, 105 P. 325, 326. See also Buck v. Dick, 1911 OK 9, 113 P. 920, 921 (we explained that appellate jurisdiction is exercised by revising the action of inferior courts, and remanding the cause for the rendition and execution of the proper judgment; and the Court of Criminal Appeals is the court exercising exclusive appellate jurisdiction and pronouncing the final appellate judgment in a criminal matter).

[78] See, e.g., Hale v. Board of County Commissioners of Seminole County, 1979 OK 158, n. 12, 603 P.2d 761, 763 (noting the then shared appellate review in juvenile delinquency matters and in direct contempt matters).

[79] See, e.g., State ex rel. Henry v. Mahler, 1990 OK 3, 786 P.2d 82, 86 (the appellate review of a decision concerning an official's application of a statute involving an inmate's credit time for reduction of a sentence was a criminal matter because "in a criminal case the 'essential part of the judgment is the punishment and the amount thereof.'").

[80] See, e.g., Movants to Quash Multicounty Grand Jury Subpoenas v. Powers, 1992 OK 142, 839 P.2d 655, 656 (The authority of the multi-county grand jury extends to both the bringing of criminal indictments as well as accusations for removal and future determinations of whether this Court or the Court of Criminal Appeals has jurisdiction over matters brought on review concerning the grand jury must be made on a case-by-case basis.).

[81] Contempt proceedings are sui generis, Henry v. Schmidt, 2004 OK 34, ¶ 11, 91 P.3d 651, 654, and with appellate review lies in both the Supreme Court and the Court of Criminal Appeals, State ex rel. Young v. Woodson, 1973 OK 151, 519 P.2d 1357, 1358.

[82] Jackson v. Freeman, 1995 OK 100, 905 P.2d 217, 223 (the Court of Criminal Appeals is a legislative Court because of the powers expressly given to the Legislature to change it or abolish it.).

[83] Carder v. Court of Criminal Appeals, 1978 OK 130, 595 P.2d 416, 420 ("There is no appeal or proceeding in error from the Court of Criminal Appeals to this Court.").

[84] Farris v. Cannon, 1982 OK 88, n. 4, 649 P.2d 529, 531 ("Whenever an act of the legislature creates a remedy but does not prescribe the procedure for its pursuit, the court is duty-bound to fashion that procedure which will best effectuate the intent of the enactment.").

[85] Darnell v. Higgins, 1926 OK 683, 255 P. 678, 679 (a common-law writ of certiorari may not be used as a substitute for an appeal, and a petitioner may not successfully invoke the Court's jurisdiction for a writ of certiorari when an appeal will lie from the challenged order).

[86] State ex rel. Henry v. Mahler, 1990 OK 3, 786 P.2d 82, 86.

[87] See, e.g., Griffin v. State, 1975 OK CR 173, 540 P.2d 1187 (although judgment and sentence had been satisfied, the application for post-conviction was not moot where petitioner sought to set aside conviction because he had not been advised of his right to counsel and knowingly and intelligently waived such right).

[88] Dutton filed: (1) Entry of Appearance (August 29, 2014); (2) Application to Assume Original Jurisdiction, (August 29, 2014); (3) An Affidavit in Support of Motion to Proceed In Forma Pauperis (August 29, 2014); (4) Motion to Appoint Counsel, (August 29, 2014); (5) Appendix of Citations of Authority and Exhibits, (August 29, 2014); (6) Proof of Service (August 29, 2014); (7) Motion to Provide Relief (Nov. 14, 2014); (8) Notice of Change of Contact Information (December 30, 2014); (9) Petitioner's Objections and Legal Argument, etc. (March 10, 2015); and (10) Petitioner's motion for evidentiary hearing, oral argument, and aid of counsel (April 17, 2015).

[89] Battle v. State, 1973 OK CR 424, 515 P.2d 269, 271, quoting Luna v. State, 1973 OK CR 389, 513 P.2d 1399.

[90] 22 O.S.2011 § 1080, states that:

Any person who has been convicted of, or sentenced for, a crime and who claims:

(a) that the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this state;
(b) that the court was without jurisdiction to impose sentence;
(c) that the sentence exceeds the maximum authorized by law;
(d) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
(e) that his sentence has expired, his suspended sentence, probation, parole, or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or
(f) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy;

may institute a proceeding under this act in the court in which the judgment and sentence on conviction was imposed to secure the appropriate relief. Excluding a timely appeal, this act encompasses and replaces all common law and statutory methods of challenging a conviction or sentence.

[91] Collier v. Reese, 2009 OK 86, ¶ 8, 223 P.3d 966, 970.

[92] Krug v. Helmerich & Payne, Inc., 2013 OK 104, ¶ 34, 320 P.3d 1012, 1022 ("a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law").

[93] Muskogee Fair Haven Manor Phase I, Inc. v. Scott, 1998 OK 26, ¶ 12, 957 P.2d 107, 111 ("a judge's powers in equity are not invocable when clear and adequate statutory remedies are available").

[94] Denning v. Van Meter, 1955 OK 18, 281 P.2d 758, 759-760.

[95] McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) quoting Atchison, T. & S.F.R. Co. v. O'Connor, 223 U.S. 280, 285, 32 S.Ct. 216, 56 L.Ed. 436 (1912) ("To satisfy the requirements of the Due Process Clause, therefore, in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy,' . . . for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one."). The use of the negative phrase "not only a fair opportunity" combined with the disjunctive "but also a clear and certain remedy" shows that the opportunity of a remedy is not identical to the remedy being clear and certain.

[96] Redbird v. Oklahoma Tax Commission, 1997 OK 126, ¶ 10, 947 P.2d 525, 527 quoting Carpenter v. Shaw, 280 U.S. 363, 369, 50 S.Ct. 121, 74 L.Ed. 478 (1930).

We note that a federal constitutional requirement for a State court providing a remedy for a constitutional deprivation is not a rule of universal application. While Congress does not possess the power, under Article I of the U. S. Constitution, to subject nonconsenting States to private suits in their own courts, Congress may authorize private suits against nonconsenting States pursuant to the enforcement power of § 5 of the Fourteenth Amendment. Alden v. Maine, 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).

[97] Redbird v. Oklahoma Tax Commission, 1997 OK 126, ¶ 11, 947 P.2d 525, 527-528; Stallings v. Oklahoma Tax Commission, 1994 OK 99, ¶ 15, 880 P.2d 912, 918.

[98] Towne v. Hubbard, 2000 OK 30, n. 18, 3 P.3d 154, 159-160.

[99] A direct attack is an attempt to avoid or correct a judicial proceeding in some manner provided by law, such as by an appeal, or motion for new trial. House v. Town of Dickson, 2007 OK 57, n. 5, 193 P.3d 964; In re Hess' Estate, 1962 OK 74, 379 P.2d 851, 855, appeal dismissed, cert. denied, Hess v. Kriz, 375 U.S. 45, 84 S.Ct. 157, 11 L.Ed.2d 108 (1963).

A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial. In re Hyde, 2011 OK 31, ¶ 11, 255 P.3d 411, 414, quoting State ex rel. Comm'rs of Land Office v. Corp. Comm'n, 1979 OK 16, ¶ 9, 590 P.2d 674, 677.

[100] Towne v. Hubbard, 2000 OK 30, n. 18, 3 P.3d at 159.

[101] We also deny Dutton's motion for hearing and oral argument because the authorities clearly show that this Court has no authority to adjudicate the merits of Dutton's claims.

[102] A limited adjudication on the question of jurisdiction is not an adjudication on the merits of the controversy. State v. Herndon, 365 Ark. 185, 226 S.W.3d 771, n. 3, 774 (2006), (and court distinguished the issue of "jurisdiction to determine jurisdiction," from "jurisdiction to hear the merits" of the controversy); Slaton v. State, 981 S.W.2d 208, 209 n. 3 (Tex.Crim.App.1998) ("The 'jurisdiction' to determine jurisdiction is the inherent authority of a court to decide whether documents filed with it invoke its jurisdiction. This differs from a court's jurisdiction to dispose of a case on the merits.").

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 86, 753 P.2d 933, HOUGHTON v. CITY OF WEWOKA
Discussed
 1995 OK CR 46, 903 P.2d 325, PAXTON v. STATE
Discussed
 1978 OK CR 57, 580 P.2d 158, STATE EX REL. COATS v. HUNTER
Discussed
 2005 OK CR 1, 107 P.3d 607, BLADES v. STATE
Discussed
 2007 OK CR 15, 157 P.3d 1152, CITY OF ELK CITY v. TAYLOR
Discussed
 2012 OK CR 11, 280 P.3d 354, HINSLEY v. STATE
Discussed
 1980 OK CR 110, 620 P.2d 1335, MURRAH v. CITY OF OKLAHOMA CITY
Discussed
 1964 OK CR 105, 396 P.2d 675, HARGROVE v. STATE
Discussed
 1975 OK CR 173, 540 P.2d 1187, GRIFFIN v. STATE
Discussed at Length
 1971 OK CR 135, 483 P.2d 357, SMITH v. STATE
Discussed
 1972 OK CR 195, 500 P.2d 303, CAMPBELL v. STATE
Discussed
 1984 OK CR 57, 678 P.2d 725, JACKSON v. CITY OF OKLAHOMA
Discussed
 1973 OK CR 389, 513 P.2d 1399, LUNA v. STATE
Discussed
 1973 OK CR 424, 515 P.2d 269, BATTLE v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 32, 737 P.2d 109, 58 OBJ 1236, Chrysler Corp. v. Clark
Discussed
 1987 OK 103, 746 P.2d 172, 58 OBJ 3054, Walters v. Oklahoma Ethics Com'n
Discussed at Length
 1988 OK 38, 753 P.2d 1356, 59 OBJ 1081, State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck
Discussed
 1939 OK 378, 95 P.2d 113, 185 Okla. 505, In re INTEGRATION OF STATE BAR OF OKLAHOMA
Discussed
 1990 OK 3, 786 P.2d 82, 61 OBJ 145, State ex rel. Henry v. Mahler
Discussed at Length
 1990 OK 82, 796 P.2d 1150, 61 OBJ 2102, State v. Lynch
Discussed at Length
 1992 OK 88, 834 P.2d 439, 63 OBJ 1834, Naylor v. Petuskey
Discussed
 1992 OK 142, 839 P.2d 655, 63 OBJ 3020, Movants to Quash Grand Jury Subpoenas Issued in Multicounty Grand Jury Case No. CJ-92-4110 Before Dist. Court of Oklahoma County v. Powers
Discussed
 1993 OK 37, 850 P.2d 1069, 64 OBJ 978, Ethics Com'n of State of Okl. v. Cullison
Discussed at Length
 1938 OK 455, 85 P.2d 288, 184 Okla. 127, STATE ex rel. CRAWFORD v. CORPORATION COMM'N
Discussed
 1937 OK 16, 65 P.2d 531, 179 Okla. 309, OKLAHOMA CITY v. ROBINSON
Discussed
 1915 OK 772, 152 P. 362, 49 Okla. 202, STATE ex rel. FREELING v. KIGHT
Discussed at Length
 1994 OK 16, 868 P.2d 708, 65 OBJ 531, Oklahoma State Senate ex rel. Roberts v. Hetherington
Discussed
 1994 OK 99, 880 P.2d 912, 65 OBJ 2532, Stallings v. Oklahoma Tax Com'n
Discussed
 1994 OK 104, 890 P.2d 836, 65 OBJ 3055, Sharp v. Tulsa County Election Bd.
Discussed
 1936 OK 582, 62 P.2d 621, 178 Okla. 210, HINKLE v. KENNY
Discussed
 1917 OK 269, 166 P. 193, 65 Okla. 233, DUNN et al. v. STATE.
Discussed
 1955 OK 18, 281 P.2d 758, DENNING v. VAN METER
Discussed
 2001 OK 95, 37 P.3d 872, 72 OBJ 3399, SMITH v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed
 1918 OK 20, 169 P. 1096, 69 Okla. 61, GLACKEN v. ANDREW
Discussed at Length
 1921 OK 122, 197 P. 460, 81 Okla. 108, WELLS v. SHRIVER
Discussed
 1922 OK 140, 206 P. 831, 87 Okla. 3, JETER v. DISTRICT COURT OF TULSA COUNTY
Discussed
 1909 OK 277, 105 P. 325, 25 Okla. 76, In re OPINION OF THE JUDGES.
Discussed at Length
 1962 OK 74, 379 P.2d 851, IN RE HESS' ESTATE
Discussed
 1964 OK 74, 391 P.2d 242, GORDON v. FOLLOWELL
Discussed
 1966 OK 183, 418 P.2d 949, LA BELLMAN v. GLEASON & SANDERS, INC.
Discussed
 1923 OK 647, 218 P. 660, 92 Okla. 262, RUGG v. LAYTON Co. Supt.
Discussed
 1968 OK 54, 440 P.2d 744, STATE ex rel. BLANKENSHIP v. FREEMAN
Discussed
 1967 OK 177, 442 P.2d 313, BUTLER v. BRECKINRIDGE
Discussed
 1995 OK 100, 905 P.2d 217, 66 OBJ 3048, Jackson v. Freeman
Discussed
 1974 OK 19, 519 P.2d 491, STATE EX REL. SOUTHWESTERN BELL TEL. CO. v. BROWN
Discussed
 1973 OK 151, 519 P.2d 1357, STATE EX REL. YOUNG v. WOODSON
Discussed
 2004 OK 12, 87 P.3d 572, STATE v. TORRES
Discussed
 2004 OK 34, 91 P.3d 651, HENRY v. SCHMIDT
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2006 OK 63, 145 P.3d 1040, IN THE MATTER OF M.B.
Discussed at Length
 2007 OK 57, 193 P.3d 964, HOUSE v. TOWN OF DICKSON
Discussed
 2008 OK 36, 184 P.3d 546, MOVANTS TO QUASH MULTICOUNTY GRAND JURY SUBPOENA v. DIXON
Discussed
 2009 OK 86, 222 P.3d 966, COLLIER v. REESE
Cited
 2010 OK 40, 237 P.3d 779, STATE v. POWELL
Discussed
 2011 OK 31, 255 P.3d 411, IN THE MATTER OF THE DEATH OF HYDE
Discussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed at Length
 2013 OK 64, 307 P.3d 337, COURTNEY v. STATE OF OKLAHOMA
Discussed
 1980 OK 32, 607 P.2d 1180, Council on Judicial Complaints v. Maley
Discussed
 2013 OK 85, 315 P.3d 971, LINCOLN FARM, L. L. C. v. OPPLIGER
Discussed
 2013 OK 104, 320 P.3d 1012, KRUG v. HELMERICH & PAYNE, INC.
Discussed
 2013 OK 108, 316 P.3d 924, COATES v. FALLIN
Cited
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 2014 OK 34, LOCKETT v. EVANS
Cited
 1977 OK 143, 567 P.2d 84, SANDERS v. FOLLOWELL
Discussed
 1978 OK 1, 572 P.2d 1296, WILLITT v. ASG INDUSTRIES, INC.
Discussed
 1979 OK 16, 590 P.2d 674, STATE v. ex rel. COMM'N OF LAND OFFICE v. CORPORATION COMM'N
Discussed
 1978 OK 130, 595 P.2d 416, CARDER v. COURT OF CRIMINAL APPEALS
Discussed at Length
 1980 OK 117, 621 P.2d 1142, Draper v. State
Discussed
 1979 OK 158, 603 P.2d 761, HALE v. BD. OF CTY. COM'RS OF SEMINOLE CTY.
Discussed at Length
 1980 OK 174, 625 P.2d 595, Initiative Petition No. 314, In re
Discussed
 2000 OK 30, 3 P.3d 154, 71 OBJ 960, Towne v. Hubbard
Discussed at Length
 1981 OK 12, 624 P.2d 1049, Tweedy v. Oklahoma Bar Ass'n
Cited
 1981 OK 66, 630 P.2d 1276, Muggenborg v. Kessler
Discussed
 1981 OK 106, 634 P.2d 718, Berry v. Empire Indem. Ins. Co.
Cited
 1997 OK 126, 947 P.2d 525, 68 OBJ 3329, IN THE MATTER OF INCOME TAX PROTEST OF REDBIRD
Discussed at Length
 1982 OK 36, 646 P.2d 605, State ex rel. Dept. of Transp., Application of
Discussed
 1982 OK 88, 649 P.2d 529, Farris v. Cannon
Discussed
 1982 OK 106, 652 P.2d 271, Democratic Party of Oklahoma v. Estep
Cited
 1926 OK 683, 255 P. 678, 124 Okla. 201, DARNELL v. HIGGINS Co. Supt.
Discussed
 1948 OK 116, 195 P.2d 272, 200 Okla. 366, SANDERS v. OKLAHOMA EMPL. SEC. COMM'N
Discussed
 1998 OK 26, 957 P.2d 107, 69 OBJ 1167, MUSKOGEE FAIR HAVEN MANOR v. SCOTT
Discussed at Length
 1999 OK 1, 976 P.2d 1035, 70 OBJ 292, In re Oklahoma Boll Weevil Eradication Organization
Discussed
 1904 OK 60, 78 P. 356, 14 Okla. 236, HOBBS v. GERMAN-AMERICAN
Discussed at Length
 1944 OK 243, 153 P.2d 483, 194 Okla. 593, BOARD OF COM'RS OF HARMON CTY. v. KEEN
Discussed at Length
 1911 OK 159, 115 P. 775, 28 Okla. 616, HERNDON v. HAMMOND
Discussed
 1911 OK 9, 113 P. 920, 27 Okla. 854, BUCK v. DICK
Discussed at Length
 1912 OK 425, 124 P. 1092, 33 Okla. 141, STATE ex rel. IKARD v. RUSSELL
Discussed
 1983 OK 117, 674 P.2d 539, Johnson v. Johnson
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 27-101, Creation of Municipal Court Not of Record
Cited
 11 O.S. 27-103, Jurisdiction
Cited
 11 O.S. 27-128, Writs of Mandamus, Prohibition and Certiorari
Cited
 11 O.S. 27-129, Appeals
Discussed at Length
 11 O.S. 27-131, Orders Relative to Procedures and Practices by Supreme Court
Cited
 11 O.S. 27-132, Appeal to Court of Criminal Appeals
Cited
 11 O.S. 28-128, Appeals
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 40, Exclusive Appellate Jurisdiction
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701.14, Repealed by Laws 1991, HB 1612, c. 238, § 37, emerg. eff. July 1, 1991
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1080, Post-Conviction Procedure Act - Right to Challenge Conviction or Sentence.
Discussed at Length
 22 O.S. 1182, Accusation Presented by Grand Jury
Cited
 22 O.S. 1194, Presentation of Accusation by County Commissioners or Judge and Treasurer -Jurisdiction
Cited
Title 28. Fees
 Cite
Name
Level

 28 O.S. 152.1, Civil Actions - Charge in Addition to Flat Fee
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 94, Attorney General - Duties
Cited