OSCN Found Document:REV. DR. MITCH RANDALL, et al. v. LINDEL FIELDS, et al.

 

 
 REV. DR. MITCH RANDALL, et al. v. LINDEL FIELDS, et al.2025 OK 91Case Number: 123237Decided: 12/16/2025THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 91, __ P.3d __

 
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

REV. DR. MITCH RANDALL; BRAD ARCHER, on behalf of himself and on behalf of his minor child, M.A.; MATTHEW DIXON, RACHEL HILL, on behalf of herself and on behalf of her minor children, E.G., F.H., and N.H.; AMBER HOOD, on behalf of herself and on behalf of her minor children, W.H. 1, W.H. 2, W.H. 3, and W.H. 4; KARA JOY McCKEE and GENE PERRY, on behalf of themselves and on behalf of their minor child, T.P.; MICHELE MEDLEY, on behalf of herself, and on behalf of her minor children, R.M. and S.M.; BRANDIE PARKER, on behalf of herself and on behalf of her minor children, C.S., J.S., and M.S.; JAY WHITNEY, on behalf of himself and on behalf of his minor child, N.W.; YULIA WHITNEY, on behalf of herself and on behalf of her minor children, D.S., and N.W.; REV. DR. LORI WALKE; and REV. DR. LISA WOLFE, on behalf of herself and on behalf of her minor children, A.M. and P.M., Petitioners,
v.
LINDEL FIELDS, in his official capacity as State Superintendent of Public Instruction; OKLAHOMA STATE DEPARTMENT OF EDUCATION; OKLAHOMA STATE BOARD OF EDUCATION; BRIAN BOBEK, JOHN NOFIRE, MIKE TINNEY, RYAN DEATHERAGE, CHRIS Van DENHENDE, and BECKY CARSON, in their official capacity as members of the Oklahoma State Board of Education. Respondents.

APPLICATION TO ASSUME ORIGINAL JURISDICTION AND PETITION FOR EXTRAORDINARY DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

¶0 Petitioners filed an application for the Court to assume original jurisdiction and a petition for declaratory, injunctive, and mandamus relief. Petitioners challenged the 2025 Oklahoma Academic Standards for Social Studies. The Court assumed original jurisdiction pursuant to a previous order that stayed enforcement of the 2025 Standards. The Court holds: (1) Original jurisdiction assumed due to the nature of the controversy; (2) Declaratory relief is granted because the 2025 Oklahoma Academic Standards for Social Studies were created using a procedure that violated 25 O.S.2021, §311

ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF GRANTED; 
STAY DISSOLVED; WRIT OF MANDAMUS WITHHELD WITHOUT PREJUDICE 

Colleen McCarty and Brent L. Rowland, Tulsa, Oklahoma, Oklahoma Appleseed Center for Law &Justice, for petitioners.

Luke Anderson, pro hac vice and Alex J. Luchenitser, pro hac vice, Washington, D.C., Americans United for Separation of Church and State, for petitioners.

Joel L. Wohlgemuth, and Chad Kutmas, Norman Wohlgemuth, LLP, Tulsa, Oklahoma, for Oklahoma State Board of Education, Brian Bobek, John Nofire, Mike Tinney, Ryan Deatherage, Chris Van DenHende, and Becky Carson, respondents.

Ryan Leonard, Elaine DeGiusti, and Heidi Long, Leonard Long &Cassi, PLLC, Oklahoma City, Oklahoma, for Oklahoma State Board of Education, respondent.

Jacquelyne K. Phelps, Oklahoma City, Oklahoma, for Oklahoma State Department of Education and Lindel Fields substituted for Ryan Walters, respondents.

EDMONDSON, J.

I. The Controversy

¶1 The petitioners brought an original jurisdiction proceeding in this Court against the Oklahoma State Department of Education, Oklahoma State Board of Education, Ryan Walters in his official capacity as State Superintendent of Public Instruction, and members of the Oklahoma State Board of Education (or Board) in their official capacities as members of the Board, Zachary Archer, Sarah Lepak, Mike Tinney, Ryan Deatherage, Chris Van-Denhende, and Becky Carson (respondents). Petitioners seek a ruling that the 2025 Oklahoma Academic Standards for Social Studies (2025 Standards) are invalid, unlawful, and unenforceable. Petitioners request an injunction to prevent respondents from taking any action to implement or enforce the 2025 Standards. We grant declaratory relief and conclude the Board approved 2025 Standards by using a procedure that violated 25 O.S.2021, §311

¶2 Three of the respondents no longer exercise an official capacity authority. District Court procedure allows a public official appearing in an official capacity to be "automatically substituted" by the official's successor in office. 

¶3 Petitioners identify themselves as participants in various communities of religious faiths, as well as some possessing atheist, agnostic, and non-religious views and principles. All but two petitioners are parents of children in public schools. Two petitioners are teachers in public schools and responsible for teaching social studies academic standards, and two petitioners are members of the clergy.

¶4 Petitioners are Oklahoma taxpayers who object to their tax dollars being used to promote religion in a public school. They allege the 2025 Standards interfere with their ability to direct and control the upbringing of their children including moral religious training and education they teach their children. They allege the 2025 Standards favor Christianity over all other religions in violation of the religious freedoms guaranteed by statutes and the Oklahoma Constitution. Petitioners allege that promotion and favoritism of Christianity will cause their children to feel ostracized and harm their education. Petitioners raising their children in the Christian faith allege the 2025 Standards promote theological doctrines and ideas contrary to the parents' Christian beliefs and their children will also be similarly harmed.

¶5 Petitioners object to the 2025 Standards requiring teachers to teach and students to learn that events depicted in a Bible

¶6 The 2025 Oklahoma Academic Standards for Social Studies were adopted to replace the 2019 Oklahoma Academic Standards for Social Studies. Petitioners' issues with the 2025 Standards include their concern that the impact of Christianity is presented as not limited in geographic scope while the world's other religions are viewed as so limited.

¶7 Petitioners point to 2025 Standards requiring first-grade students to identify how David and Goliath, as well as Moses and the Ten Commandments, influenced colonists in colonial America, the Founders of the United States, and American culture. A first-grade student will analyze the student's role in the community and "explain patriotic traditions that unite citizens" including an explanation of "the purpose and meaning of the Pledge of Allegiance and the significance of the phrase 'under God.'" A first-grade student will "identify and explain the meaning of the United States' official motto, 'In God We Trust,' including the importance of religion to American people."

¶8 A second-grade student is required to "identify stories from Christianity that influenced the America Founders and culture, including teachings of Jesus of Nazareth." A third-grade student will analyze the purpose of government and traits of responsible citizens, and "explain how the Preamble to the Oklahoma Constitution reflects the power of people and their reliance on spiritual guidance." A fifth-grade student must be able to "explain how the Framers based the Constitution on 'the Laws of Nature and of Nature's God,' as expressed in the Declaration of Independence and influence by Biblical principles, reflected in the writings of the Founders."

¶9 A seventh-grade student must evaluate the development and impact of culture on major geographical regions and peoples of the Eastern Hemisphere, and examine major religions, including their influence on contemporary societies, "by explain[ing] the origins and central figures of Christianity, by identifying its sacred texts and teachings," and "explaining its basic beliefs (e.g., monotheism, eternal life, Jesus of Nazareth as the messiah)," and "its relationship to Judaism, and its impact on modern societies and contemporary culture."

¶10 An eighth-grade student will "evaluate the role of Judeo-Christian ideals in supporting colonial demands for independence, as exemplified by The Bible being frequently cited authority by America's founders." A high school student must trace the Biblical account of Hebrew immigrations from Mesopotamia to Canaan, later in Egypt and explain the roles of Abraham and Moses in the book of Exodus. A high school student is required to describe a Bible's account of the unification of tribes of Israel under Kings Saul, David, and Solomon including the founding of Jerusalem by David, and building of a temple by Solomon.

¶11 A high school student must analyze the impact of patterns of ancient political, economic, and cultural development, and analyze the influence of religious, political, and philosophical ideals on society, and examine the influence of Judeo-Christian ethics and Mosaic law on the early American political and legal systems, as well as modern legal systems. A high school student must "analyze contemporary turning points of 21st century American society," and the student will "identify discrepancies in the 2020 election results by looking at graphs and other information, including the sudden halting of ballot counting in select cities in key battleground states, the security risks of mail-in balloting, sudden batch dumps, and the unprecedented contradiction of bellwether county trends." Students must "analyze contemporary turning points of 21st century American society" and must "identify the source of COVID-19 pandemic from a Chinese lab and the economic and social effects of state and local lockdowns."

¶12 Petitioners argue the content of these standards violates several state statutes for standards for education. They argue factually incorrect information in the standards violates 70 O.S.§11-103.670 O.S. §11-103.670 O.S. §§11-101

¶13 Petitioners argue the content of the standards violates three provisions of the Oklahoma Constitution, Art. I, §§2, and 5, and Art. II § 5. Okla. Const. Art. I, § 2 states as follows.

Perfect toleration of religious sentiment shall be secured, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship; and no religious test shall be required for the exercise of civil or political rights. Polygamous or plural marriages are forever prohibited.

Okla. Const. Art. I, §5 states as follows.

Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English: Provided, that nothing herein shall preclude the teaching of other languages in said public schools.

Okla. Const. Art. II §5 states as follows.

No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such.

¶14 In addition to challenging the content of the 2025 Standards, petitioners challenge the procedure that was used to adopt the Standards. They argue respondents violated the Open Meeting Act, 25 O.S. §§30125 O.S. §§30370 O.S. §11-103.6

II. Original Jurisdiction

¶15 We previously assumed original jurisdiction for the purpose of the stay issued by the Court. We first address why the Court assumes original jurisdiction over this controversy. The Court has assumed original jurisdiction when legal uncertainty existed concerning the validity of public school contracts and there existed a need for judicial resolution to provide for the operation of the school, and the legal controversy was part of a larger publici juris issue. State ex rel. Freeling v. Ross, 1919 OK 257183 P. 918Draper v. State, 1980 OK 117621 P.2d 1142Id. ¶6, 621 P.2d at 1145 (explaining Oklahoma Association of Municipal Attorneys v. State, 1978 OK 59577 P.2d 1310publici juris" controversy that often requires statewide judicial relief. 

¶16 Respondents point to federal court opinions and argue federal courts do not exercise general oversight of a federal agency of the federal executive branch of government. This is correct, but its application to the present controversy is misplaced. The Oklahoma Constitution, Article VII, § 4, states in part: "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." This Article VII, §4, superintending control is exercised in the form of "judicial power" created and vested by Okla. Const. Art. VII, § 1, for the purpose of a judicial determination of a legally cognizable justiciable controversy. Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532

¶17 A person may bring a civil proceeding in District Court and seek declaratory or injunctive relief, or both, when seeking relief from a violation of the Open Meetings Act, 25 O.S. § 314original jurisdiction declaratory remedy and relief is not defined by remedies of declaratory relief obtainable in a District Court. Sierra Club v. State ex rel. Oklahoma Tax Commission, 2017 OK 83405 P.3d 691Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532publici juris issue has a potential for repeated occurrence and if judicial economy is served by immediate adjudication. Sanders v. Followell, 1977 OK 143567 P.2d 84

¶18 Respondents argue the 2025 Standards have not yet been implemented. They argue petitioners' claims are not yet a concrete or ripe controversy. In Democratic Party of Oklahoma v. Estep, 1982 OK 106652 P.2d 271Id. ¶15, 652 P,2d 271. However, respondents cite 70 O.S. §11-103.670 O.S. §11-103.6

¶19 In Ethics Commission of State of Oklahoma v. Cullison, 1993 OK 37850 P.2d 1069Id. ¶6 n.2, 850 P.2d at 1072 n.2. Additionally, in 1982 we explained that seeking declaratory relief is especially useful in a case where a justiciable controversy between the parties exists and a party would be required to do or refrain from doing some action at the party's legal peril. Conoco, Inc. v. State Department of Health, 1982 OK 94651 P.2d 125

¶20 The Court assumed original jurisdiction on September 15, 2025, for the purpose of issuing a temporary stay that prevented respondents from implementing or enforcing the 2025 Standards until a further order from the Court. We dissolve the temporary stay and explain why we assume original jurisdiction and grant declaratory relief. The requested equitable relief of an injunction or mandamus is denied without prejudice. A presumption exists that public officials perform their public duties in good faith, and we typically withhold equitable mandatory relief in anticipation of this performance based upon the Court's adjudication. In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23326 P.3d 496

¶21 We assume original jurisdiction pursuant to Okla. Const. Art. VII, § 4, to address petitioners' claim that respondents violated the Open Meeting Act and the effect upon the 2025 Oklahoma Academic Standards for Social Studies. We conclude these standards were adopted in violation of the Open Meeting Act, and the 2019 Standards are the current valid Standards until replaced by the Board of Education.

III. Analysis and Open Meeting Act

¶22 Petitioners make an argument based upon provisions of the Oklahoma Constitution. The Court may decline to adjudicate a constitutional issue presented by the parties if a decision on the issue is not necessary to resolve the controversy. Independent School District No. 12 of Oklahoma County v. State ex rel. Board of Education, 2024 OK 39565 P.3d 23

¶23 Petitioners' challenge to the 2025 Standards based upon the Oklahoma Open Meeting Act involves a judicial interpretation of a statute and presents a question of law subject to de novo review. 25 O.S.2021, §§ 301

"Public body" means the governing bodies of all municipalities located within this state, boards of county commissioners of the counties in this state, boards of public and higher education in this state and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts or any entity created by a public trust including any committee or subcommittee composed of any of the members of a public trust or other legal entity receiving funds from the Rural Economic Action Plan Fund as authorized by Section 2007 of Title 62 of the Oklahoma Statutes, task forces or study groups in this state supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body.

25 O.S.2021, §304

Public body shall not include:

a. the state judiciary,

b. the Council on Judicial Complaints when conducting, discussing, or deliberating any matter relating to a complaint received or filed with the Council,

c. the Legislature,

d. administrative staffs of public bodies including, but not limited to, faculty meetings and athletic staff meetings of institutions of higher education when those staffs are not meeting with the public body, or entry-year assistance committees,

e. multidisciplinary teams provided for in Section 1-9-102 of Title 10A of the Oklahoma Statutes, in Section 10-115 of Title 43A of the Oklahoma Statutes, and in subsection C of Section 1-502.2 of Title 63 of the Oklahoma Statutes or any school board meeting for the sole purpose of considering recommendations of a multidisciplinary team and deciding the placement of any child who is the subject of the recommendations,

f. meetings conducted by stewards designated by the Oklahoma Horse Racing Commission pursuant to Section 203.4 of Title 3A of the Oklahoma Statutes when the stewards are officiating at races or otherwise enforcing rules of the Commission,

g. the board of directors of a Federally Qualified Health Center or the postadjudication review boards provided for in Sections 1116.2 and 1116.3 of Title 10 of the Oklahoma Statutes, or

h. boards of county commissioners for the purposes set forth in subsections C, D, and E of Section 326 of Title 19 of the Oklahoma Statutes;

25 O.S.2021, §304

¶25 The Legislature has stated a public policy for the Open Meeting Act (OMA): "It is the public policy of the State of Oklahoma to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S.2021, §30225 O.S.2021, §311

A. Notwithstanding any other provisions of law, all regularly scheduled, continued or reconvened, special or emergency meetings of public bodies shall be preceded by public notice as follows: . . .

9. a. In addition to the advance public notice in writing required to be filed for regularly scheduled meetings, described in paragraph 1 of this subsection, all public bodies shall, at least twenty-four (24) hours prior to such regularly scheduled meetings, display public notice of the meeting by at least one of the following methods:

(1) by posting information that includes date, time, place and agenda for the meeting in prominent public view at the principal office of the public body or at the location of the meeting if no office exists, or

(2) by posting on the public body's Internet website the date, time, place and agenda for the meeting in accordance with Section 3106.2 of Title 74 of the Oklahoma Statutes. Additionally, the public body shall offer and consistently maintain an email distribution system for distribution of such notice of a public meeting required by this subsection, and any person may request to be included without charge, and their request shall be accepted. The emailed notice of a public meeting required by this subsection shall include in the body of the email or as an attachment to the email the date, time, place and agenda for the meeting and it shall be sent no less than twenty-four (24) hours prior to the meeting. Additionally, the public body shall make the notice of a public meeting required by this subsection available to the public in the principal office of the public body or at the location of the meeting during normal business hours at least twenty-four (24) hours prior to the meeting.

b. In addition to the notice requirements of this section, all state public bodies, as defined in paragraph 2 of this subsection, shall, at least twenty-four (24) hours prior to regularly scheduled meetings, display public notice of the meeting by:

(1) posting information that includes date, time, place and agenda for the meeting in prominent public view at the principal office of the public body or at the location of the meeting if no office exists, and

(2) posting on the public body's Internet website the date, time, place and agenda for the meeting in accordance with Section 3106.2 of Title 74 of the Oklahoma Statutes;

Petitioners' have presented a record showing Board members received a notice of proposed Standards seventeen (17) hours prior to the meeting where Standards were adopted. A notice of seventeen hours violates 25 O.S.2021, §311

¶26 Petitioners state an earlier version of the proposed Standards was available to the public for comment in December 2024. However, text involving religious and political themes was injected into the version for the Board's approval in the February meeting. For example: (1) Requiring first-grade students to identify and explain David and Goliath, as well as Moses and the Ten Commandments; (2) Requiring high school students to analyze as a contemporary turning point of the 21st century and to identify the source of the COVID-19 pandemic from a Chinese lab and the economic and social effects of state and local lockdowns; (3) Requiring high school students to analyze as a contemporary turning point of the 21st century and identify discrepancies in the 2020 election results, including ballot counting in select cities in "key battleground states," security risks with mail-in balloting, unexpected record number of voters, and "unprecedented contradiction of bellwether county trends." The version of the Standards approved by the Board on February 27, 2025, was not publicly posted until after the Board voted on the 2025 Standards. Three Board members stated in a subsequent meeting of the Board that they did not know that the version they were voting on was different from the version publicly posted in December 2024. Respondents do not contest these allegations.

¶27 Respondents argue the agenda included the subject of Standards to be approved by the Board, and that the Board is allowed to amend the Standards without publicly disclosing the amendments prior to the Board's meeting. Respondents rely upon Andrews v. Independent School District No. 29 of Cleveland County, 1987 OK 40737 P.2d 929Andrews, the agenda stated the "Superintendent would make his report and recommendations concerning an increase in academic requirements," and the meeting included "a recommendation that the minimum number of credits required for graduation be increased and that the eligibility requirements for extracurricular activity participation be raised." Id. 1987 OK 40Id. 1987 OK 40

¶28 In Andrews, the topic of increasing academic requirements for sports participation was not on the agenda as a specific item, but this specific item was raised within the context of an agenda item for discussing academic guidelines. We concluded the agenda did not require that a report of proposed complete academic guidelines be published prior to presenting the report to the Board. We then noted: "Furthermore, agenda of the four subsequent meetings clearly gave notice in plain language sufficient to be comprehended by a person of ordinary education and intelligence that the eligibility requirements for extracurricular activities would be presented and discussed at the board meetings." Id. 1987 OK 40

¶29 Respondents' view of Andrews appears to be that an agenda item may be expanded with substantive content in a public body's meeting with final action upon it, provided the new substantive content is presented as an amendment to an item in the agenda. In other words, respondents' view is that substantive content adopted by a public body as an amendment to an item in an agenda does not necessarily need public exposure provided the substantive content is classified as an "amendment" by the public body. We disagree because this view elevates procedure over substance where a procedure of amending an agenda item is used to submit new and fundamentally different agenda items not previously made public.

¶30 An OMA agenda must be worded in plain language, directly stating the purpose of the meeting, and the language should be comprehensible to a person of ordinary education and intelligence. Andrews, 1987 OK 40Fraternal Order of Police, Bratcher/Miner Memorial Lodge, Lodge No. 122 v. City of Norman, 2021 OK 20489 P.3d 20

¶31 The agenda item stated: "The State Department of Education is presenting and requesting approval of the proposed Oklahoma Academic Standards for Science (OAS-S) and Social Studies (OAS-SS)." When this agenda item was publicly posted the one publicly posted version of the Standards was the December 2024 version. The members of the State Board of Education received the 2025 Standards approximately seventeen (17) hours before they were to vote on them. The record before the Court also shows that in past meetings when a vote was going to be taken on proposed standards, then agendas provided notice the proposed standards could be modified. The agenda for the meeting on February 27, 2025, did not provide this type of notice.

¶32 A similar issue arose in Fraternal Order of Police, supra, where the posted agenda did not include the possibility of amendments to a budget in a meeting. We noted "transparency to the public requires advance notice that potential amendments may be considered at the public meeting." Fraternal Order of Police, 2021 OK 20Fraternal Order of Police: "Because it was enacted for the public's benefit, the Open Meeting Act 'is to be construed liberally in favor of the public.'"

¶33 We conclude the notice of the agenda for the 2025 Standards violated 25 O.S.2021, §311

IV. Legislative Adoption by Acquiescence

¶34 Respondents argue academic standards approved by the Board in violation of the OMA may be legally enforceable if the Legislature has adopted them. They suggest methods of legislature adoption may be by (1) a joint resolution, (2) legislative silent acquiescence, (3) not acting to prevent the standards from being implemented, or (4) approving the Board's standards by incorporating one or more of them in a subsequent statute. They argue: (1) The state's policy-making power is vested exclusively in the Legislature, and such power specifically includes public education; and (2) The policy to be pursued in matters of enactment of legislation to discharge its constitutional responsibility to the people in matters of education is a question that rests solely within the Legislature's discretion. They rely upon Oklahoma Education Association v. State ex rel. Oklahoma Legislature, 2007 OK 30158 P.3d 1058

¶35 Following approval by the Board, standards are submitted to the Legislature prior to the last thirty days of the legislative session. 70 O.S.2021, §11-103.6a-1Id. §11-103.6a-1(C). The Legislature did not adopt a joint resolution approving the 2025 Standards. The 2025 Standards were "deemed approved" by the Legislature without creating a joint resolution addressing adoption of these standards. However, the Legislature amended a different statute, 70 O.S.Supp.2024, §11-103

¶36 The standards are not implemented by the Board until the legislative review process is completed. 70 O.S.2021, §11-103.6a-175 O.S.Supp.2023 §250.470 O.S.2021, §11-103.6a-1

¶37 Respondents argue the Board's procedural failure to follow the Open Meeting Act may be cured by legislative silence on the proposed standards because this silence creates a "deemed approval" of the standards. Although not expressed by respondents, they appear to be making an argument that the 2025 Standards, as administratively created standards, are "legislative facts"

¶38 When the Legislature creates a procedure for introducing, hearing, and passing legislation based upon the existence of facts as one type of condition precedent, and the facts must be certified by an agency of the executive department, then the codified procedure amounts to a self-imposed limitation on how legislation is presented and created for the legislative process. Stevens v. Fox, 2016 OK 106383 P.3d 269Id. However, while a statute (or legislative action) based upon or incorporating inaccurate facts will generally survive a judicial challenge based upon their inaccuracy, may be subject to judicial invalidation. 

¶39 Arbitrariness has more than one definition. One definition for an "arbitrary act" states an arbitrary and capricious act is "acting in a manner that is willful and unreasonable without consideration or in disregard of facts or without determining principle or unreasoning." Scott v. Oklahoma Secondary School Activities Association, 2013 OK 84313 P.3d 891

¶40 The Legislature's silence in response to a judicial or executive department interpretation of law may, in some circumstances, create one of the types of legislative acquiescence to a judicial or executive interpretation. i.e., the Open Meeting Act violation, but the Legislature still allowed the 2025 Standards to be deemed approved. The article also purportedly quotes "the office" of Oklahoma Senate's President Pro Tempore and states: "The standards are not a legislative obligation, and the curriculum is developed by the State Department of Education." Respondents' use of the news article would also support petitioners' position that when the Legislature discussed the 2025 Standards: (1) The Legislature recognized the courts are a proper party to address Open Meeting Act alleged violations; and (2) The Legislature viewed its role in deeming the standards approved as a less expansive scope of approval than the one championed by respondents' argument. The record before us does not show an express legislative approval of the 2025 Standards or an express legislative statement that the Legislature intended to validate a previous specific Open Meeting Act violation. 

¶41 Statutes often state that certain acts "shall be deemed," or "shall be held to be," or "shall be conclusively presumed to be" something else. 

¶42 In the context of an Open Meeting Act violation from a lack of proper notice and agenda, we have explained a subsequent act by the government entity "will not cure the violation or 'breathe life' into the prior illegal action." Hirschfeld v. Oklahoma Turnpike Authority, 2023 OK 59541 P.3d 811

¶43 We conclude the Legislature's silent acquiescence and deemed approval of the 2025 Oklahoma Academic Standards for Social Studies did not cure the State Board's violation of the Open Meeting Act.

V. Conclusion

¶44 The Oklahoma State Board of Education violated the Open Meeting Act when it approved the 2025 Oklahoma Academic Standards for Social Studies. The subsequent silent acquiescence and deemed approval of these Standards by the legislature did not cure the State Board's violation of the Open Meeting Act.

¶45 The 2025 Oklahoma Academic Standards for Social Studies shall not be enforced. The 2019 Oklahoma Academic Standards for Social Studies remain in effect until the State Board properly creates new Oklahoma Academic Standards for Social Studies with subsequent legislative approval. The stay previously issued and staying enforcement of the 2025 Standards is dissolved and replaced by the Court's opinion preventing their enforcement.

¶46 CONCUR: WINCHESTER, EDMONDSON, COMBS, GURICH, and DARBY, JJ.

¶47 DISSENT: ROWE, C.J. (by separate writing); KANE, J. (joins ROWE, C.J.); PRINCE, S.J. (by separate writing); DOWNING, S.J. (by separate writing).

¶48 RECUSED: KUEHN, V.C.J.; and JETT, J.

FOOTNOTES

Oliver v. Hofmeister, 2016 OK 15368 P.3d 1270

Powers v. District Court of Tulsa County, 2009 OK 91227 P.3d 1060State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31489 P.3d 36Chandler U.S.A., Inc. v. Tyree, 2004 OK 1687 P.3d 598

See, e.g., Pike Off OTA, Inc. et al., v. Oklahoma Turnpike Auth., 2023 OK 57531 P.3d 107Ethics Comm'n v. Cullison, 1993 OK 37850 P.2d 1069Macy v. Oklahoma City Schl. Dist. No. 89, 1998 OK 58961 P.2d 80412 O.S. § 1651

Giglio v. Barrett, 207 Ala. 278, 92 So. 668, 669-70 (1922).

See, e.g., Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532publici juris." (quoting Naylor v. Petuskey, 1992 OK 88834 P.2d 439

25 O.S.2021, § 314

A. Any person or persons willfully violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a period not exceeding one (1) year or by both such fine and imprisonment.

B. Following a violation of this act, any person:

1. May bring a civil suit for declarative or injunctive relief, or both; and

2. If successful, shall be entitled to reasonable attorney fees.

C. If the public body successfully defends a civil suit and the court finds that the suit was clearly frivolous, the public body shall be entitled to reasonable attorney fees.

Indep. Sch. Dist. No. 12 of Okla. Cnty. v. State ex rel. State Bd. of Educ., 2024 OK 39565 P.3d 23

. See, e.g., Chronic Pain Associates, Inc. v. Bubenik, 1994 OK 127885 P.2d 1358citing Ingram v. Oneok, Inc., 1989 OK 82775 P.2d 810Ethics Comm'n of State of Okla. v. Cullison, 1993 OK 37850 P.2d 1069Phillips v. Okla. Tax Comm'n, 1978 OK 34577 P.2d 1278

See, e.g., State v. Lawton, 1974 OK 69523 P.2d 1064Colorado State Bd. of Optometric Examr's v. Dixon, 165 Colo. 488, 440 P.2d 287

Hirschfeld v. Oklahoma Turnpike Authority, 2023 OK 59541 P.3d 811citing Head v. McCracken, 2004 OK 84102 P.3d 670Fulsom v. Fulsom, 2003 OK 9681 P.3d 652

Fraternal Order of Police, 2021 OK 20quoting Lafalier v. Lead-Impacted Cmtys. Relocation Assistance Tr., 2010 OK 48237 P.3d 181quoting Int'l Ass'n of Firefighters, Local 2479 v. Thorpe, 1981 OK 95632 P.2d 408

See, e.g., 70 O.S.2021 §11-103.6a

70 O.S.2021, §11-103.6a-1

70 O.S.2011 §11-103.11

75 O.S.Supp.2023 §250.4

70 O.S.2021, §11-103.6a

City of Oklahoma City v. Oklahoma Corp. Comm'n, 2024 OK 77558 P.3d 1231An Approach to Problems of Evidence in the Administrative Process, 55 Harv. L. Rev 364, 402 (1942) ("When an agency wrestles with a question of law or policy, it is acting legislatively, just as judges have created the common law through judicial legislation, and the facts which inform its legislative judgment may conveniently be denominated legislative facts.").

Lee v. Bueno, 2016 OK 97381 P.3d 736

See, e.g., State v. Lynch, 1990 OK 82796 P.2d 1150

See, e.g., Cole v. State ex rel. Dep't of Pub. Safety, 2020 OK 67473 P.3d 467Murray Cnty. v. Homesales, Inc., 2014 OK 52330 P.3d 519Oklahoma Tax Comm'n v. Liberty Nat'l Bank & Trust Co., 1955 OK 208289 P.2d 388In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23326 P.3d 496

See, e.g., Bishop v. Takata Corporation, 2000 OK 7112 P.3d 459

Oklahoma State Department of Education's Controversial Social Studies Standards Approved, KOCO News 5 (April 29, 2025) (https://www.koco.com/article/oklahoma-social-studies-standards-moving-forward -ryan-walters/64623287)."

Cf. Hammons v. Muskogee Med. Cntr. Auth.,1985 OK 22697 P.2d 539

Mistletoe Express Service v. United Parcel Service, Inc., 1983 OK 27674 P.2d 1City of New Port Richey v. Fid. & Deposit Co., 105 F.2d 348, 351 (5th Cir.1939)).

Id.

Southon v. Okla. Tire Recyclers, LLC, 2019 OK 37443 P.3d 566

In re Bucher, 1933 OK 15920 P.2d 150Words and Phrases, First Series, p. 3848)); In re Assessment of Kansas City Southern Ry. Co., 1934 OK 28133 P.2d 772Landowners v. People ex rel. Stookey, 113 Ill. 296, 309 (1885))).

REV. DR. MITCH RANDALL; BRAD ARCHER, on behalf of himself and on behalf of his minor child, M.A.; MATTHEW DIXON, RACHEL HILL, on behalf of herself and on behalf of her minor children, E.G., F.H., and N.H.; AMBER HOOD, on behalf of herself and on behalf of her minor children, W.H. 1, W.H. 2, W.H. 3, and W.H. 4; KARA JOY McCKEE and GENE PERRY, on behalf of themselves and on behalf of their minor child, T.P.; MICHELE MEDLEY, on behalf of herself, and on behalf of her minor children, R.M. and S.M.; BRANDIE PARKER, on behalf of herself and on behalf of her minor children, C.S., J.S., and M.S.; JAY WHITNEY, on behalf of himself and on behalf of his minor child, N.W.; YULIA WHITNEY, on behalf of herself and on behalf of her minor children, D.S., and N.W.; REV. DR. LORI WALKE; and REV. DR. LISA WOLFE, on behalf of herself and on behalf of her minor children, A.M. and P.M., Petitioners,
v.
LINDEL FIELDS, in his official capacity as State Superintendent of Public Instruction; OKLAHOMA STATE DEPARTMENT OF EDUCATION; OKLAHOMA STATE BOARD OF EDUCATION; BRIAN BOBEK, JOHN NOFIRE, MIKE TINNEY, RYAN DEATHERAGE, CHRIS Van DENHENDE, and BECKY CARSON, in their official capacity as members of the Oklahoma State Board of Education. Respondents.

ROWE, C.J., with whom KANE, J., joins, DISSENTING: 

¶1 The Open Meeting Act (the "Act") is by far one of the most consequential statutory enactments our state has adopted. It serves to promote Oklahomans' right to know what their government is doing and for what purpose public funds are expended. The Act protects the political power vested in Oklahomans granted to them by the state Constitution.

¶2 The Act requires that at least twenty-four hours prior to a meeting, a public body is required to display public notice of the meeting by posting information that includes date, time, place, and agenda for the meeting. 25 O.S. § 31125 O.S. § 311 Fraternal Order of Police v. City of Norman, 2021 OK 20, 489 P.3d 20 (quoting Andrews v. Indep. Sch. Dist. No. 29 of Cleveland Cty., 1987 OK 40737 P.2d 929Id. The Act provides that actions taken by a public body will be invalidated if violation of the Act is found to be willful. See 25 O.S. § 313

¶3 Whether a public body has violated the Act involves a fact-intensive inquiry that requires fact finding--a responsibility vested with the trial court. I have previously emphasized that compliance with the Act is a legal question "where the trial court must ascertain findings of fact." Hirschfeld, 2023 OK 59Id.

¶4 The Majority assumes original jurisdiction to address Petitioners' claim that Respondents violated the Act. Doing so requires two findings: (1) Respondents violated the Act and (2) Respondents' actions were willful. Determining whether a willful violation has occurred demands a complete factual record--a record which we do not have with an application to assume original jurisdiction.

¶5 "Whether the Court exercises supervisory or superintending original jurisdiction is a discretionary decision, . . ." Indep. Sch. Dist. No. 12 of Oklahoma Cnty. v. State ex rel. State Bd. of Educ., 2024 OK 39565 P.3d 23

REV. DR. MITCH RANDALL; BRAD ARCHER, on behalf of himself and on behalf of his minor child, M.A.; MATTHEW DIXON, RACHEL HILL, on behalf of herself and on behalf of her minor children, E.G., F.H., and N.H.; AMBER HOOD, on behalf of herself and on behalf of her minor children, W.H. 1, W.H. 2, W.H. 3, and W.H. 4; KARA JOY McCKEE and GENE PERRY, on behalf of themselves and on behalf of their minor child, T.P.; MICHELE MEDLEY, on behalf of herself, and on behalf of her minor children, R.M. and S.M.; BRANDIE PARKER, on behalf of herself and on behalf of her minor children, C.S., J.S., and M.S.; JAY WHITNEY, on behalf of himself and on behalf of his minor child, N.W.; YULIA WHITNEY, on behalf of herself and on behalf of her minor children, D.S., and N.W.; REV. DR. LORI WALKE; and REV. DR. LISA WOLFE, on behalf of herself and on behalf of her minor children, A.M. and P.M., Petitioners,
v.
Ryan Walters, in his official capacity as State Superintendent of Public Instruction; Oklahoma State Department of Education; Oklahoma State Board Of Education; Zachary Archer, Sarah Lepak, Mike Tinney, Ryan Deatherage, Chris Van Dehende, and Becky Carson, in their official capacity as members of the Oklahoma State Board of Education, Respondents.

PRINCE, S.J., dissenting: 

¶1 I respectfully dissent. As resolved by the Majority Opinion, this case turns on whether the alleged violation of the Open Meetings Act should be held to have been a "willful" violation. See 75 O.S. § 313See Rogers v. Excise Bd. of Greer Cnty., 1984 OK 95701 P.2d 754[w]ilfullness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act. Notice of meetings of public bodies which are deceptively vague and likely to mislead constitute a willful violation.") (emphasis added); Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50510 P.3d 845de novo issue whether a prima facie case was presented.").

¶2 The Majority Opinion noted at ¶ 17, that original jurisdiction had been assumed here "to determine if a violation of the Open Meetings Act occurred . . .". It is unmistakable, however, that the legal issues spawned by the allegations here are not simple legal issues. For example, it is undisputed that the OSBE posted a timely notice of its regularly scheduled meeting on February 27, 2025, and that the wording of agenda item 6(a)(1), on that posting generally stated, in part, that "[t]he State Department of Education is presenting and requesting approval of the proposed Academic Standards for Science . . . and Social Studies . . .". The relevant statute, 25 O.S. § 311See 75 O.S. § 313See Hirschfeld v. Oklahoma Tpk. Auth., 2023 OK 59541 P.3d 811

¶3 Once a record in this case has been fully developed and the Respondents have had their day in court, it will then be proper for this Court to rule in this case and flesh out the meaning of the term "agenda", as used in 25 O.S. §§ 311A(9)a(1) & 311B(1), as applied to the facts of this case. I would remand the entire matter to the appropriate trial court for a first instance determination of all of the various claims that have been asserted.

REV. DR. MITCH RANDALL; BRAD ARCHER, on behalf of himself and on behalf of his minor child, M.A.; MATTHEW DIXON, RACHEL HILL, on behalf of herself and on behalf of her minor children, E.G., F.H., and N.H.; AMBER HOOD, on behalf of herself and on behalf of her minor children, W.H. 1, W.H. 2, W.H. 3, and W.H. 4; KARA JOY McCKEE and GENE PERRY, on behalf of themselves and on behalf of their minor child, T.P.; MICHELE MEDLEY, on behalf of herself, and on behalf of her minor children, R.M. and S.M.; BRANDIE PARKER, on behalf of herself and on behalf of her minor children, C.S., J.S., and M.S.; JAY WHITNEY, on behalf of himself and on behalf of his minor child, N.W.; YULIA WHITNEY, on behalf of herself and on behalf of her minor children, D.S., and N.W.; REV. DR. LORI WALKE; and REV. DR. LISA WOLFE, on behalf of herself and on behalf of her minor children, A.M. and P.M., Petitioners,
v.
Ryan Walters, in his official capacity as State Superintendent of Public Instruction; Oklahoma State Department of Education; Oklahoma State Board Of Education; Zachary Archer, Sarah Lepak, Mike Tinney, Ryan Deatherage, Chris Van Dehende, and Becky Carson, in their official capacity as members of the Oklahoma State Board of Education, Respondents.

DOWNING, S.J., DISSENTING:

¶1 I respectfully dissent and would deny Petitioners' requested relief. I am not persuaded by Petitioners' premature arguments in propositions IV and V claiming the legislatively approved standards violate the Oklahoma Constitution or Statutes. Instead, Petitioners' concerns seem to fall squarely into the realm of policy disagreement with the standards the Legislature approved. Head v. McCracken, 2004 OK 84102 P.3d 670

¶2 Even if I were persuaded by Petitioners' remaining propositions, Petitioners' requested relief that the Judiciary declare the legislatively approved standards invalid due to an agency board's actions, is not a possible remedy. Under Petitioners' remaining arguments, at most the Judiciary could find the board's action void, See 25 O.S.Supp.2024, § 30425 O.S.2021, § 309 25 O.S.2021, § 31370 O.S.2021, § 11-103

¶3 Regardless, I am not persuaded an OMA violation occurred as argued by Petitioners in proposition II. A notice was timely provided at least twenty-four hours before the meeting, including "date, time, place and agenda." 25 O.S.Supp.2024, § 311Id. The agenda stated, "The State Department of Education is presenting and requesting approval of the proposed Oklahoma Academic Standards for Science (OAS-S) and Social Studies (OAS-SS)." That agenda description is exactly what happened at the meeting. Petitioners argue it was an OMA violation for updated draft standards not to be provided to board members or the public twenty-four hours prior to the meeting. I find no such requirement in Section 311, and Respondents correctly argue that Petitioners cite no law with that requirement. Instead, Petitioners rely on Fraternal Order of Police v. City of Norman, 2021 OK 20489 P.3d 20City of Norman, which specifically identified the version of a budget it would vote on, here the agency board did not identify a specific version of standards it would vote to propose, but instead set the agenda generally for "presenting and requesting approval." While I agree it is desirable and perhaps good policy to have all possible versions of draft standards publicly available prior to a board meeting to present, amend, or adopt said standards, Section 311 simply does not require it. Moreover, even if there was an OMA violation, the actions of a board are still not void unless it was "willful", a determination that would require fact finding and a record that is not before us on original jurisdiction. 25 O.S.2021, § 313

¶4 Petitioners argue in proposition III that board members relinquished authority of the standards in violation of 70 O.S.2021, § 11-103

¶5 Accordingly, I find all of Petitioners' propositions are without merit and would deny relief. I would have also voted to deny assumption of original jurisdiction for the same reasons set forth in the dissent to the order granting it.

FOOTNOTES

25 O.S.2021, § 314

70 O.S.2021, § 11-103See Okla. Sup. Ct. R. 1.6(c)(1), 12 O.S.2021, Ch. 15, App. 1 ("if the Court omits a discussion of such a request for a dismissal, it will be deemed denied"); Okla. Sup. Ct. R. 1.36(g), 12 O.S.2021, Ch. 15, App. 1 ("Motions for leave to submit appellate briefs shall be deemed denied unless affirmatively granted by the court"). The Judiciary would not want other branches of government to give lesser weight or effect to our exercise of these Supreme Court rules, simply because we did not issue an order. The intentional decision to not pass a joint resolution is a strategic exercise of the Legislature's separate and sovereign approval of the standards, and should not be characterized as anything less.